STATE of Iowa, Appellant,

v.

Dennis R. MYER and Norma J. Myer, Appellees.

No. 88–157.

Supreme Court of Iowa.

June 14, 1989.

Thomas J. Miller, Atty. Gen., Christie J. Scase and Kevin B. Struve, Asst. Attys. Gen., for appellant.

Burns Mossman and Frank B. Harty of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellee Norma J. Myer.

James R. Monroe, Des Moines, for appellee Dennis R. Myer.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL and ANDREASEN, JJ.

ANDREASEN, Justice.

In this appeal, we consider the effect of a taxpayers' demand for return of documents and records after they had been voluntarily delivered to, and inspected by, a state income tax auditor. The trial court ordered the return of the documents and records and ordered the suppression of any evidence derived from the records after the taxpayers' demand for their return. We conclude that incriminating documentary evidence properly discovered prior to the revocation of consent should not be suppressed.

█ I. Because this appeal concerns the constitutional right to be free from unreasonable searches and seizures, our review of the district court's suppression ruling is de novo. *See State v. Vincik,* 436 N.W.2d 350, 353 (Iowa 1989).

Our de novo review of the record discloses the following background facts and proceedings. In August of 1985 the Iowa Department of Revenue began an audit of the tax returns filed by Dennis and Norma Myer for the years 1981 through 1984. Victor Lamb, an investigative auditor with the Department of Revenue, contacted the Myers asking them to appear for an interview and to bring certain tax records with them. On August 22, 1985, the Myers voluntarily appeared without counsel for an interview and brought with them records, worksheets and documents used to prepare their tax returns. Before auditor Lamb received these tax records, he informed the Myers of possible criminal consequences for evasion of taxes. He also informed them that anything said to him or any records provided could be used against them in the event of a criminal charge. The Myers then voluntarily surrendered their tax records to Lamb.

Lamb began his review of the Myers' tax records immediately by comparing the reported income with the Myers' deposit records. On September 5, 1985, a subpoena was issued to Bankers Trust to obtain certain information about specific deposits to the Myers' accounts. The bank produced copies of four identical checks in the amount of $8,773.22 that had been deposited in the Myers' account in 1981, 1982, 1983 and 1984. These deposits, totaling $35,082.88, were not reflected on the Myers' state income tax returns.

On October 1, 1985, Lamb met with the Myers to review reported income discrepancies. He asked them about the questioned deposits and the Myers' answers did not clarify the situation. Prior to October 15, Lamb was aware that these deposits were money received from the sale of Mrs. Myer's stock in Cole Farms, Inc., to her brother-in-law. He secured a copy of the installment sales agreement from the Idaho Department of Revenue.

On October 15, 1985, the Myers requested the immediate return of all records and materials that they had provided. Prior to this request, auditor Lamb had reviewed and inspected all of the records but had not photocopied them. He agreed to return the original records to the Myers after photocopies were made. The records were returned to Myers' attorney on October 18, 1985, but photocopies were retained by Lamb.

On November 13, 1987, the Myers were each charged by trial information with four counts of income tax evasion in violation of Iowa Code section 422.25(8) (1987). On December 10, 1987, the Myers filed a motion to suppress all evidence obtained through the use of their tax records after October 15, 1985, as well as all evidence derived from the interview on August 22, 1985. The district court granted the Myers' motion to suppress in regard to the evidence obtained through the use of records after October 15, 1985, but denied the motion to suppress evidence obtained from the August interview. The district court ruled that the State could not use any information obtained from the Myers' records after October 15, 1985, and ordered the State to return all copies of the records obtained from the Myers.

The State filed an application for discretionary review of the trial court's ruling. After granting the State's application, we transferred the case to the court of appeals. The court of appeals affirmed the district court's suppression order. We granted the State's application for further review.

II. The State argues that documentary evidence gathered prior to a revocation of consent should not be suppressed. It urges the Myers have abandoned any expectation of privacy in the records and their retention was justified. In response to the State's arguments, the Myers assert that when they revoked their consent on October 15, 1985, the State was required to immediately release all documents provided. According to the Myers, any use of the records after their revocation of consent exceeded the limits of their consent and was a violation of their fourth amendment rights.

■ Warrantless searches and seizures are unreasonable unless they fall within one of the carefully drawn exceptions to

the warrant requirement. *State v. Vincik,* 436 N.W.2d 350, 353 (Iowa 1989). Granting authorities the consent to search is an exception to the warrant requirement. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854, 860 (1973). The consent to search must be given voluntarily. Here, there is no dispute that the Myers' consent was voluntary.

■ III. In conducting any consent search, the authorities are limited by the terms of the consent. *See id.* (the right of the officers to search is only coextensive with the particular search consented to). Consent may be withdrawn or limited at any time prior to the completion of the search. *United States v. Milian–Rodriguez,* 759 F.2d 1558, 1563 (11th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 112 (1985). However, a revocation of consent does not operate retroactively to render unreasonable that search conducted prior to the time of revocation. *See Jones v. Berry,* 722 F.2d 443, 449 n. 9 (9th Cir. 1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2343, 80 L.Ed.2d 817 (1984); *United States v. Black,* 675 F.2d 129, 138 (7th Cir.1982), *cert. denied,* 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983); 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.1(c) at 173 (2d ed. 1987); *see also State v. Johns,* 679 S.W.2d 253, 262 (Mo.1984) (en banc) ("We reject the notion one can revoke his or her consent to a search after incriminating evidence has been discovered."), *cert. denied sub nom. Johns v. Missouri,* 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985).

The Myers rely heavily on two cases for support of their challenge to the seizure of these records. *See United States v. Ward,* 576 F.2d 243 (9th Cir.1978); *Mason v. Pulliam,* 557 F.2d 426 (5th Cir.1977). Both *Pulliam* and *Ward* dealt with the revocation of consent concerning financial documents provided to the Internal Revenue Service (IRS). In both cases, the taxpayers revoked consent to search financial documents and the courts suppressed evidence taken from the records after consent had been withdrawn. While these courts suppressed certain documents seized after consent was revoked, neither court suppressed incriminating evidence discovered prior to the revocation. *See Ward,* 576 F.2d at 244–45; *Pulliam,* 557 F.2d at 429.

■ *Pulliam* and *Ward* stand for the general proposition that consent to a search or seizure can be limited or withdrawn. However, this rule cannot be extended to render unreasonable the proper seizure of incriminating evidence discovered prior to revocation. *See Alinovi v. Worcester School Committee,* 766 F.2d 660, 669–70 (1st Cir.1985) (discussing *Pulliam* and questioning its continued viability).

■ The case of *Jones v. Berry,* 722 F.2d 443 (9th Cir.1983), is particularly instructive in understanding this area of law. In *Jones,* IRS agents received permission to search a residence for certain evidence. The agents seized sixteen boxes of documents in that search. On that same day, after the search of the residence had been completed and the documents seized, the defendant revoked consent and demanded the return of the documents. The IRS refused to return the documents. *Id.* at 445.

On appeal, the Ninth Circuit reversed the district court's suppression of the documents. The Ninth Circut held documents properly seized prior to the revocation of consent were not taken in violation of the fourth amendment. The holding in *Ward* requires only the suppression of evidence discovered after the consent had been revoked.

> No claim can be made that items seized in the course of a consent search, if found, must be returned when consent is revoked. Such a rule would lead to the implausible result that incriminating evidence seized in the course of a consent search could be retrieved by a revocation of consent.

*Jones,* 722 F.2d at 449 & n. 9; *see also United States v. Guzman,* 852 F.2d 1117, 1122 (9th Cir.1988) (even if consent is revoked, "evidence found before revocation will not be suppressed"). We find the rea-

soning in *Jones* to be directly applicable and persuasive.

The Myers argue that *Jones* does not apply in this case because the state auditor had not completed his examination of the records. However, auditor Lamb had conducted extensive investigation of the records prior to the revocation of consent. This investigation of the records was focused on unreported income and the records revealed specific and significant discrepancies in each of the tax years being audited. Based on the information gathered, the retention of the records on October 15, 1985 was justified.

We hold that the incriminating evidence discovered prior to the Myers' revocation of consent was properly seized within the parameters of the consent search and was properly photocopied without violating the Myers' fourth amendment rights.

IV. Because of our holding, we need not address the State's argument that the retention of records was not a search or seizure because the Myers had abandoned any reasonable expectation of privacy in the records voluntarily delivered. Nor do we consider the State's argument that the retention of records was justified by probable cause and exigent circumstances.

V. The decision of the court of appeals is vacated and that part of the district court order which suppressed evidence derived from the records and ordered the return of photocopied material is reversed. This case is remanded for proceedings consistent with this opinion.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.