**STATE of Iowa, Appellee,**

v.

**Juan Luis GARCIA, Appellant.**

No. 89–36.

Supreme Court of Iowa.

Oct. 17, 1990.

Raymond E. Rogers, Appellate Defender, and B. John Burns, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., and Stephen J. Petersen, County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL and ANDREASEN, JJ.

LARSON, Justice.

Juan Luis Garcia was convicted of possession of cocaine with intent to deliver, based in part on evidence seized from his car and motel room. The court of appeals reversed his conviction on the ground that the evidence was seized illegally. The State applied for further review. We vacate the court of appeals decision and affirm the district court.

Members of the Muscatine police force had Garcia and his motel room under surveillance when they learned that he did not have a driver's license. They were instructed to arrest Garcia if they saw him drive. On the night of Garcia's arrest, the

officers saw him place items in his car and drive away from the motel. Garcia stopped at a filling station, and the officers confronted him there. They asked for a driver's license, and he responded that he did not have one.

One of the officers asked Garcia to walk to the patrol car, and he complied. While Garcia was in the patrol car, an officer searched his car, finding a gun in the glove compartment. The search was then stopped. Garcia was taken to police headquarters, and his car was towed to the police garage. At the police station, Garcia signed a form giving consent to search his car and motel room. These searches uncovered cocaine and drug paraphernalia.

Defendant moved to suppress evidence of the gun and drug-related items. The trial court suppressed the gun on the ground that it was the product of an illegal "inventory" search but denied the motion to suppress the drug evidence obtained under the written consent.

Garcia contends, and the court of appeals held, that the initial search of Garcia's car was illegal, and any consent later obtained from him was therefore tainted as "fruit of the poisonous tree." *See Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963).

The State responds that the initial arrest was valid because the officers had grounds to arrest Garcia, and did arrest him on the license violation. The search which revealed the gun was therefore valid as an incident to that arrest. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981). Therefore, there was no "poisoning" to taint the consent. It argues further that, even if the first search were invalid, the later consent to search was sufficiently attenuated in time and circumstances to render the consent valid. This is what the district court held.

■ It is well established that a warrantless search, with voluntary consent, is valid under the fourth amendment. *State v. Myer,* 441 N.W.2d 762, 765 (Iowa 1989); *State v. Erickson,* 362 N.W.2d 528, 530 (Iowa 1985). The burden is on the State to establish voluntariness by a preponderance of the evidence. *State v. Holland,* 389 N.W.2d 375, 381 (Iowa 1986); *Erickson,* 362 N.W.2d at 530; *State v. Lamp,* 322 N.W.2d 48, 53 (Iowa 1982); *State v. Folkens,* 281 N.W.2d 1, 3 (Iowa 1979). When reviewing the issue of voluntariness, we make an independent evaluation of the totality of the circumstances and determine whether the consent was voluntarily given. In this evaluation, we review the evidence de novo. *Polly v. State,* 355 N.W.2d 849, 854 (Iowa 1984); *State v. Hahn,* 259 N.W.2d 753, 758 (Iowa 1977); *State v. Ahern,* 227 N.W.2d 164, 166 (Iowa 1975). The fact that a defendant is in custody, standing alone, is insufficient to demonstrate a coerced consent to search. *United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598, 609 (1976); *United States v. Frye,* 548 F.2d 765, 770 (8th Cir.1977); *United States v. Bazinet,* 462 F.2d 982, 989 (8th Cir.1972). Likewise, the fact that defendant was read his *Miranda* rights does not in and of itself show that consent was voluntary. *Brown v. Illinois,* 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 427 (1975).

## I. *The Initial Search.*

■ Because the initial search, which revealed the gun, weighs heavily on the question of voluntariness of the later consent, we will first address the validity of that search. Our court has stated the principles which apply to warrantless searches:

> While the fourth amendment prohibits only unreasonable searches and seizures, warrantless searches and seizures are *per se* unreasonable unless they come within a few "jealously and carefully drawn" exceptions. The burden is upon those seeking to apply the exceptions to prove their applicability by a preponderance of the evidence.

*State v. Bakker,* 262 N.W.2d 538, 546 (Iowa 1978). Courts have generally recognized three exceptions to this rule:

> "No warrant is necessary when the search and seizure, within prescribed limits, are incident to a lawful arrest; the warrant requirement may be waived by

an informed and voluntary consent; and, third, existence of exigent circumstances may relieve an officer from the obligation to obtain a warrant if it is impracticable to do so."

*State v. Shane*, 255 N.W.2d 324, 326 (Iowa 1977) (quoting *State v. Jackson*, 210 N.W.2d 537, 539 (Iowa 1973)); *see also Myer*, 441 N.W.2d at 765.

■ The State has made no claims of any consent or exigent circumstances as to the search of the car. The legality of the search, therefore, depends upon the first exception, the search incident to arrest. The Supreme Court, in *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981), held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Our court adopted the *Belton* rule in *State v. Sanders*, 312 N.W.2d 534, 539 (Iowa 1981). The initial question here, therefore, is whether the arrest was lawful.

In *State v. Reese*, 259 N.W.2d 793 (Iowa 1977), we stated:

> In order for the State to establish the officers had reasonable grounds to conduct an investigatory stop of a motor vehicle when the grounds are questioned, the State must show the officers possessed objective facts that indicate "... the stopping officer has specific and articulable cause to reasonably believe criminal activity is afoot. Circumstances evoking mere suspicion or curiosity will not suffice."

*Id.* at 795 (quoting *State v. Dixon*, 241 N.W.2d 21, 23 (Iowa 1976)).

The court of appeals held that the arrest of Garcia was pretextual. "[A] pretextual arrest occurs when the police employ an arrest based on probable cause as a device to investigate or search for evidence of an unrelated offense for which probable cause is lacking." *United States v. Trigg*, 878 F.2d 1037, 1039 (7th Cir.1989); *see also United States v. Guzman*, 864 F.2d 1512, 1515 (10th Cir.1988). In such a case, the arrest serves as a means to circumvent the warrant requirements of the fourth amendment. *Trigg*, 878 F.2d at 1039.

Courts have differed in their approach to the problem of pretextual arrests. The traditional response to this police tactic has been to suppress all evidence derived from the search incident to the pretextual arrest. *Id.* Due to recent Supreme Court cases, however, many courts are examining arrests objectively. In fact, "many courts will uphold a search incident to a traffic arrest in the face of clear evidence of an ulterior motive." 2 W. LaFave, *Search and Seizure* § 5.2, at 460 (2d ed. 1987). In a recent decision, the Seventh Circuit reviewed Supreme Court decisions relevant to the issue of pretextual arrests. The court concluded:

> Given this language in a Supreme Court opinion [*Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973) ], we, as an intermediate appellate court, do not feel empowered to evaluate the reasonableness of a particular arrest based on the arrest's conformance to usual police practices. Rather, we believe that the reasonableness of an arrest depends upon the existence of two objective factors. First, did the arresting officer have probable cause to believe that the defendant had committed or was committing an offense. Second, was the arresting officer authorized by state and or municipal law to effect a custodial arrest for the particular offense. If these two factors are present, we believe that an arrest is necessarily reasonable under the fourth amendment. This proposition may be stated in another way: so long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest is constitutional.

*Trigg*, 878 F.2d at 1041; *see also United States v. Neu*, 879 F.2d 805, 808 (10th Cir.1989) ("subjective intent of the officer is not material"); *Guzman*, 864 F.2d at 1515 ("Most circuits and commentators agree that an objective analysis of the facts and circumstances of a pretextual stop is appropriate, rather than an inquiry into the officer's subjective intent."); *Unit-*

ed States v. Causey, 834 F.2d 1179, 1185 (5th Cir.1987) ("in a case where the officers have taken no action except what the law objectively allows their subjective motives in doing so are not even relevant to the suppression inquiry"); United States v. Smith, 799 F.2d 704, 708–09 (11th Cir.1986) ("objectively reasonable stop or other seizure is not invalid solely because the officer acted out of improper motivation").

The court of appeals relied on State v. Aschenbrenner, 289 N.W.2d 618, 619 (Iowa 1980), to show our court has adopted a subjective test: "Officers are bound by their true reason for making the stop. They may not rely on reasons they could have had but did not actually have." See State v. Bailey, 452 N.W.2d 181, 182 (Iowa 1990) (same). Even applying this subjective standard, the arrest was proper because the officers did have a proper, albeit a secondary, reason for the stop. Officers may have multiple reasons for making a stop: "The officer is bound by the true reason *or reasons* for making the stop; that is, the officer may not rely on reasons that he or she could have had *but did not actually have.*" Westendorf v. Iowa Dep't of Transp., 400 N.W.2d 553, 556 (Iowa 1987) (quoting State v. Lamp, 322 N.W.2d 48, 51 (Iowa 1982)) (emphasis added). Officer LeMar testified of multiple purposes for making the stop:

Q. Officer LeMar, what was your real purpose in having Mr. Garcia stopped for no driver's license? A. The no driver's license is a violation of the law. And I also had a very strong suspicion that he was dealing in narcotics.

Because the officers had grounds to stop the car and make the arrest because of Garcia's failure to have a valid driver's license, we believe the search which was incidental to the arrest was also proper. This removes the "poison" from the tree under Wong Sun and eliminates the basic premise of Garcia's argument that his later consent to search was invalid.

## II. The Consent to Search.

■ Even if it were assumed that the initial stop was invalid and the search therefore improper, the later search based on the written consent by Garcia was valid. Garcia was given his Miranda warnings and executed a consent-to-search form which stated:

6. You have the right to refuse permission to search your property whether owned, leased, or under your control, without a valid search warrant.

Defendant did not ask questions concerning this or any of the rights read to him. After hearing all the rights, defendant signed the consent-to-search form.

Other than being in police custody, no coercion is claimed.

In addition to signing the consent-to-search form, Garcia's voluntariness was exhibited by his cooperation with Detective Havemann. Havemann was forthright with Garcia, explaining that he believed there was cocaine in his car. Havemann then asked Garcia if he would mind telling him where it was. Garcia then told him the cocaine would be found under the driver's seat. See United States v. Culp, 472 F.2d 459, 462 (8th Cir.1973) (defendant going to closet and getting evidence is factor indicating voluntariness); State v. Ege, 274 N.W.2d 350 (Iowa 1979) (voluntariness indicated when defendant went to house, found the evidence, and relinquished it to the officer); State v. Kissner, 252 N.W.2d 330, 334 (S.D.1977) (defendant telling officer where drugs secreted factor indicating voluntariness).

Garcia's consent form was signed at 9:16 p.m. This was approximately one hour after his arrest.[1] Prior to signing the consent form Garcia was read and initialed each line. He was told he had the right to refuse the search and asked if he had any questions. He signed the consent form and told the officers that the cocaine would be found under the driver's seat. Garcia

---

1. According to most courts, the probability of the consent being involuntary increases when the consent closely follows the illegal arrest. 3 W. LaFave, *Search and Seizure* § 8.2, at 193 n. 100 (including pocket part) (2d ed. 1987). *But see Juarez v. State,* 758 S.W.2d 772, 781–82 (Tex. Crim.App.1988) (court argues illegal custody oppressive as it becomes longer).

had not been subjected to prolonged interrogation, police threats, or coercion.

It is also important that the defendant was candidly informed that the officer's expected to find cocaine if the search was conducted. Since the prior search only turned up a gun, defendant's consent was not based on the belief that it was useless to deny consent because the prior search had produced evidence relating to possession of cocaine. The gun found in the prior search related to a completely different offense. *See* 3 W. LaFave, *Search and Seizure* § 8.2, at 194–95 (2d ed. 1987). The fact that the consent to search extended to defendant's motel room as well as his car is also significant. Since the officers had exercised no control over defendant's motel room, defendant had no reason to believe the search would be conducted with or without his consent. *See id.* § 8.2, at 196.

Finally, there is no evidence in the record to indicate Garcia was physically or emotionally impaired. Garcia's testimony and the testimony of officers present when he gave consent indicates he was coherent and responsive. He testified that he remembered being read and explained his rights and initialing each line. At no point has he claimed he did not understand the rights read to him.

Under this record, particularly in view of our determination that the initial search of the car was not invalid, the State has shown by a preponderance of the evidence that Garcia knowingly and voluntarily consented to the search of his car and motel room. Accordingly, we vacate the court of appeals decision and affirm the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.