STATE of Iowa, Appellant,

v.

Patrick Jeffrey STANFORD, Appellee.

No. 90–1632.

Supreme Court of Iowa.

Sept. 18, 1991.

Bonnie J. Campbell, Atty. Gen., David A. Ferree, Sp. Asst. Atty. Gen., and Carolyn Olson and Mark Hunacek, Asst. Attys. Gen., and Kelly Raines, Asst. County Atty., for appellant.

Richard H. Zimmerman, Iowa City, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

The State petitioned for discretionary review after the district court suppressed evidence in a prosecution for operating while intoxicated (OWI). We granted the petition and now reverse the district court and remand for further proceedings.

Patrick Jeffrey Stanford was injured in a motor vehicle accident on August 3, 1990, in Johnson County, Iowa. An Iowa state trooper was dispatched to the scene and upon arrival found the driver of the vehicle, Stanford, lying on the ground being attended by medical personnel. The trooper was unable, at that time, to talk with Stanford about the accident because of the medical attention he was receiving. Stanford was later transported from the accident scene to the University of Iowa Hospitals. The trooper went to the hospital, was joined by other troopers, and continued the investigation. At the hospital the trooper was able to talk with Stanford. During this initial conversation the trooper noticed a moderate smell of alcohol and also noticed Stanford's eyes to be somewhat bloodshot and watery. Stanford admitted he had approximately three beers that evening.

The trooper requested, and Stanford consented, to submit to a preliminary breath test (PBT). The trooper indicated that the PBT result was just over .10 and accordingly, requested that Stanford submit to a blood test. *See* Iowa Code §§ 321J.5, 321J.6 (1989). Stanford emphatically refused to submit to the blood test apparently because of his strong aversion to needles. The trooper then requested a urine specimen as an alternative to the blood specimen. The implied consent advisory was read to Stanford, and he signed the advisory consenting to provide a urine specimen.

Stanford then attempted to provide a urine specimen for the trooper. However, at this time he was lying on his back on a backboard and related although he was trying, he was unable to urinate. After X-rays were taken and the backboard was removed, Stanford was again requested, this time by the attending nurse with a trooper present, to provide a urine specimen. Once again, Stanford was unable to produce a specimen. Stanford's inability to urinate became of some concern to the attending nurse. The nurse informed Stanford that his inability to urinate might be related to internal urinary tract trauma. Stanford was told that if he remained unable to urinate, a catheterization procedure might have to be used. Stanford voiced objections to this procedure. Soon thereafter the room was cleared and Stanford produced a urine specimen. The nurse took the specimen, contained in a hospital urinal, and gave part of it to the trooper.

Stanford filed a motion to suppress the urine sample evidence claiming that he had been coerced into providing it. Following the hearing, the district court found:

In order for the urine sample to be admissible it has to be obtained from the

defendant freely and voluntarily and without threat or coercion. In this case the court finds that the statements by Nurse Woods that the defendant might have to be catheterized to obtain a urine sample were coercive....

The court suppresses the urine sample for the reason that the language by Nurse Woods, although inadvertent, would be considered by the Court to be coercive, as viewed by the defendant, and further that the defendant was not advised at the time he was providing the urine to Nurse Woods for medical analysis that it would also be used by the State for the chemical test to determine alcohol concentration.

### I. *Scope of Review.*

■ Our review of the constitutional issues is de novo, which involves an independent evaluation of the totality of the circumstances as shown by the entire record. *State v. Owens,* 418 N.W.2d 340, 342 (Iowa 1988). In considering the statutory questions our review is to correct errors of law. *Id.*

### II. *Voluntariness and Coercion.*

■ The first of the district court's grounds for suppressing the evidence involved the question of coercion. The district court's conclusions focus on the issue of coercion at the time the specimen was actually given. Rather, the court should focus on the issue of coercion at the time the consent was given. The determination of voluntariness is made from the fact *at or before the time* the consent was given. *State v. Garcia,* 461 N.W.2d 460, 464–65 (Iowa 1990). The law pertaining to the consent exception to a search warrant is helpful.[1]

■ Warrantless searches and seizures are unreasonable unless they fall within one of the carefully drawn exceptions to the warrant requirement. *State v. Meyer,* 441 N.W.2d 762, 764–65 (Iowa 1989). Voluntary consent is one of the recognized exceptions to the requirement of a warrant. *Id.* at 765. Evidence obtained by consent which has been voluntarily given is admissible. *Garcia,* 461 N.W.2d at 462. The State must prove that the consent was free from duress and coercion. *Id.* When questions of voluntariness are raised, an examination of the totality of the circumstances is made. *Id.* The burden is on the State to establish voluntariness by a preponderance of the evidence. *Id.*

■ Here, Stanford concedes he voluntarily agreed to provide a urine sample. He testified that he voluntarily signed the implied consent advisory. Furthermore, Stanford testified that he did not feel he was coerced in any fashion to sign the consent form.

### III. *Limitation, Revocation, or Withdrawal of Consent.*

■ Stanford argues his consent, although originally voluntary, was tacitly withdrawn and later coerced by the threat of catheterization. In consent to search cases, an initial voluntary grant of consent may be limited, withdrawn or revoked at any time prior to the completion of the search. *Meyer,* 441 N.W.2d at 765. However, in order to limit, revoke or withdraw an initial grant of consent, the consenter must clearly inform the appropriate official that the initial consent has been limited, withdrawn or revoked. *See United States v. Alfaro,* 935 F.2d 64, 67 (5th Cir.1991), and cases cited therein.

■ In our review of the record, we find that Stanford did not inform the proper official with specificity he wanted to

---

1. Iowa is one of the states where a person suspected of OWI may refuse to submit a requested specimen prior to arrest on the OWI charge. Iowa Code §§ 321J.6, 321J.9. A person who refuses to submit a requested specimen, prior to arrest, and who does not come under the purview of Iowa Code sections 321J.7 (dead or unconscious) and 321J.10 (person involved in accident resulting in death or personal injury likely to cause death) is not amenable to a warrant directing production of a specimen but rather is subject to the administrative penalty of suspension of license or driving privileges. *State v. Owens,* 418 N.W.2d at 344 (Iowa 1988); *State v. Hitchens,* 294 N.W.2d 686, 687–88 (Iowa 1980).

limit, revoke or withdraw his initial written consent to provide a urine specimen to the troopers. Initially, Stanford could not provide a urine specimen to the troopers because of his particular treatment position on the backboard. Later attempts to obtain a specimen were unsuccessful because Stanford was physically unable to provide a specimen even though he said he was trying. It was not that Stanford *would not* provide a specimen, rather, it was that Stanford *could not* provide a specimen. A statement that one will not provide a specimen is precise, whereas a statement that one cannot provide a specimen is unclear.

Here, Stanford's actions in the hospital as reflected in his testimony "I couldn't right then," and "because I couldn't," did not clearly inform the trooper that he was revoking his consent. Stanford admitted he had not told the trooper that he had decided to withdraw his consent and would not provide a sample. "His conduct thus falls short of an unequivocal act or statement of withdrawal, something found in most withdrawal of consent cases." *Alfaro,* 935 F.2d at 67.

### IV. *Seizure of a Sample from a Third Party.*

The argument was raised, and the district court apparently agreed, that Stanford intended that the urine specimen he produced for the attending nurse be used solely for medical purposes. Thus, Stanford argues that the transmittal of the urine from the hospital to the police without a warrant violated his fourth amendment rights.

 This court recently decided that a *specimen,* given voluntarily for nonprosecutorial purposes, is subject to a search warrant. *State v. Oakley,* 469 N.W.2d 681, 682–83 (Iowa 1991). Here, the signed advisory constitutes valid consent for fourth amendment purposes. Since Stanford had consented to provide a urine specimen, there was no need for a warrant to allow the troopers to obtain part of the hospital sample. At the point Stanford gave his voluntary consent, which was never revoked or withdrawn, he had no objective basis for claiming an expectation of privacy

with respect to any specimen given. *Oakley* at 683. Once Stanford gave his voluntary consent to submit or provide a specimen, it makes no difference that the specimen was received from the attending nurse.

### V. *Conclusion.*

Stanford gave his consent to submit a urine sample for chemical analysis of alcohol content. The consent was given voluntarily and without coercion. The consent was never explicitly revoked or withdrawn. After the consent was given, it was proper for the troopers to obtain a portion of any sample that Stanford gave; this being true even if Stanford believed the specimen he was providing was solely for medical purposes. The ruling of the district court suppressing the urine sample evidence is reversed and the case is remanded for further proceedings.

REVERSED AND REMANDED.