STATE of Iowa, Appellee,

v.

Lawrence Francis MAHONEY, Appellant.

No. 92–1171.

Court of Appeals of Iowa.

Jan. 25, 1994.

Richard E.H. Phelps II of Brierly Law Office, Newton, for appellant.

Bonnie J. Campbell, Atty. Gen., Roxann M. Ryan, Deputy Atty. Gen., James Wilson,

County Atty., and Richard J. Scieszinski, Asst. County Atty., for appellee.

Considered by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

In the early morning of October 19, 1991, Jasper County Deputy Sheriff Koeneman was on patrol west of Newton when he received CB reports of a small, dark car traveling the wrong way on Interstate 80 at a slow rate of speed. As the deputy was proceeding towards Newton, CB traffic reported that the vehicle turned around and was driving slowly, in the proper direction, in the eastbound lane. The deputy saw a car on the left-hand shoulder of the interstate with a left turn signal on. Deputy Koeneman observed the vehicle suddenly turn and go right across two lanes of interstate traffic up the exit ramp to Newton. The car was moving slowly and weaving.

Deputy Koeneman attempted to stop the car as he followed it onto Highway 14 and across the Interstate 80 bridge. Deputy Koeneman used his yellow flashing lights, red flashing lights, the spotlight, and the siren. The driver, defendant Mahoney, ultimately pulled over. Deputy Koeneman observed Mahoney was not responsive or coherent and had difficulty unfastening his seat belt and getting out of the car. Mahoney could not perform field sobriety tests. At his trial, however, Mahoney maintained he requested almost immediately he be given a blood test, but that the deputy refused.

On October 24, 1991, Mahoney was charged by trial information with operating a motor vehicle while intoxicated (OWI) in violation of Iowa Code section 321J.2 (1991). Mahoney filed a motion to suppress the evidence obtained from the stop on the grounds Deputy Koeneman did not have reasonable grounds to make the stop. The district court denied the motion.

At trial, Mahoney argued the car that was observed going the wrong way could not have been his because his car was a silver-colored Chevrolet Lumina, while the description of the suspect vehicle given over the CB was of a small, dark vehicle. Mahoney further testi-fied he was traveling the correct way on the interstate since he was driving from the east side of Newton after leaving Shooters bar. Mahoney argued he could not have left the bar at approximately 2:10 a.m., driven over ten miles the wrong way to Colfax, turned around, and made it back to the Newton exit at 2:21 a.m., the time at which Deputy Koeneman made the stop.

Deputy Koeneman testified he had not seen any other cars matching the description of the suspect vehicle. Koeneman testified he stopped Mahoney after observing him weaving across two lanes of interstate traffic, weaving up the exit ramp, running a stop sign, and weaving across two lanes of traffic while crossing the bridge over the interstate.

After the jury returned a guilty verdict, the district court sentenced Mahoney to a thirty-day jail term, all but seven days suspended, a $750 fine, and one year probation. Mahoney appeals.

Mahoney argues Deputy Koeneman did not have reasonable cause to stop his vehicle. He repeats his argument that, since he left Shooters bar shortly after 2:00 a.m., he could not have driven over ten miles the wrong way, turned around, driven back to Newton, crossed the interstate, and proceeded on Highway 14 by 2:21 a.m., the time Deputy Koeneman testified he made the stop. Mahoney also argues, among other things, the district court erred in overruling his objection to jury instruction number 9, which stated, although Mahoney requested an independent blood test, the arresting officer is not required to take such a test if the suspect refused to take a breath test. Mahoney also argues the district court should have granted a mistrial after the assistant district attorney mentioned at trial a trooper "found in the vehicle a previous O.W.I. ...." We address each issue in turn.

■ Appellant first argues Deputy Koeneman did not have reasonable cause to stop his vehicle and the court, therefore, should have suppressed all evidence from the stop. When addressing constitutional issues on appeal our review is de novo. *State v. Lamp*, 322 N.W.2d 48, 50 (Iowa 1982); *State v. Iverson*, 272 N.W.2d 1, 4 (Iowa 1978). Ap-

pellant bases his argument on the premise the officer stopped his car by mistake.

Deputy Koeneman approached exit 164 from the west in response to CB reports of a small, dark car initially traveling the wrong way on the eastbound lanes and then turning around and heading east. As he approached the exit, the deputy saw a car on the left shoulder with its left signal on. The car veered right across two lanes of traffic and headed up the exit ramp to highway 14. The deputy followed the car up the ramp, flashing his spotlight across the back window to get the driver's attention. He also turned on his emergency lights and his siren before the vehicle finally stopped. Appellant testified he never was on the eastbound lanes and he took the westbound ramp of exit 164. He asserts:

> [I]t would have been possible and probable that the Deputy lost track of the small dark vehicle at the I–80/Highway 14 interchange and when arriving at the entrance to Highway 14 South of I–80 saw Mr. Mahoney's vehicle and stopped it.

We find it implausible that the deputy, while shining his spotlight on a car from about two car lengths behind it, could "lose track" of the car and stop another by mistake. The question remains whether the deputy had reasonable grounds for stopping the car. *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906–07 (1968); *State v. Malloy,* 453 N.W.2d 243, 244 (Iowa App. 1990). The officer must have "specific and articulable cause to reasonably believe criminal activity is afoot.... [C]ircumstances evoking mere suspicion or curiosity will not suffice." *State v. Cooley,* 229 N.W.2d 755, 761 (Iowa 1975); *see State v. Aschenbrenner,* 289 N.W.2d 618, 619 (Iowa 1980). The officer may have several reasons for the stop; the stop will be upheld if any of those reasons are sufficient. *State v. Garcia,* 461 N.W.2d 460, 463–64 (Iowa 1990). The officer saw the car moving slowly on the left shoulder, turning across two lanes to take the exit, *see* Iowa Code §§ 321.314–15 (1993), weaving up the exit ramp, running a stop sign, *see* Iowa Code § 321.256 (1993), weaving across the traffic lanes on the bridge, and failing to respond to obvious attempts to stop the car.

The deputy clearly had "specific and articulable cause" to stop the car. Therefore, the court did not err in refusing to suppress the evidence from the stop.

Appellant next asserts the court erred in giving jury instruction nine which states:

> The Defendant allegedly requested an independent blood test. A police officer is not required to offer such a blood test upon a refusal by the Defendant to submit to a breath test.

Appellant objected on the grounds the instruction does not correctly interpret Iowa Code section 321J.11 and because of the word "allegedly."

■ The issue of statutory interpretation raised by appellant apparently is one of first impression. *See State v. Oakley,* 469 N.W.2d 681, 682 (Iowa 1991). In interpreting statutes we seek to give effect to the intent of the legislature. *State v. Berry,* 247 N.W.2d 263, 264 (Iowa 1976). "We also try to give meaning and effect to every part of the statute." *Id.; see State v. Ludvigson,* 482 N.W.2d 419, 422 (Iowa 1992). Iowa Code section 321J.11 (1993) states in pertinent part:

> [A]ny peace officer, using devices and methods approved by the commissioner of public safety, may take a specimen of a person's breath or urine for the purpose of determining the alcohol concentration or the presence of drugs....
>
> The person may have an independent chemical test or tests administered at the person's own expense *in addition to* any administered at the direction of a peace officer.

(Emphasis added.)

The supreme court declined to address sua sponte the issue of whether a person must submit to the test administered by the officer before being allowed to have an independent test. *State v. Oakley,* 469 N.W.2d at 682. The court did not, however, leave us without some indication of how it might rule if the question were properly presented on appeal. It cited *State v. Zoss,* 360 N.W.2d 523, 525 (S.D.1985) and *People v. Dewey,* 431 N.W.2d 517, 520 (Mich.App.1988) as both supporting the proposition that submission to the state's

test is a condition precedent to demanding an independent test. The cases are instructive.

Both courts decided due process did not prohibit requiring a defendant to take a state-administered test before allowing a demand for an independent test. The South Dakota statute stated a defendant could have a "chemical analysis *in addition to* the one administered at the direction of the law enforcement officer." S.D.Codified Laws Ann. § 32–23–15 (emphasis added.) The Michigan statute similarly stated:

A person who takes a chemical test administered at the request of a peace officer ... shall be given a reasonable opportunity to have a person of his or her own choosing administer 1 of the chemical tests described in this section.

Mich.Comp.Laws § 257.625a(5); Mich.Stat. Ann. § 9.2325(1)(5).

The South Dakota court cited *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as requiring the State to give defendants access to any material evidence in the state's possession that is favorable to the defendant. *State v. Zoss*, 360 N.W.2d at 525. Both the South Dakota and Michigan courts cited *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), and *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), to support the proposition that fairness requires a defendant be afforded a meaningful opportunity to present a complete defense. Both courts then interpreted their statutes to require a state-administered test before allowing a defendant to demand an independent test. Both courts held that this interpretation does not violate the fairness required by due process. The South Dakota court stated:

There was no assurance the blood test would be exculpatory. It may have been to the contrary. The same may be said of the requested breath test. If [defendant] had wanted possible exculpatory evidence, she could have consented to the breath test which may have been exculpatory and still had a chance of getting a possible exculpatory blood test. There is nothing fundamentally unfair in this procedure, nor did it deny her a "meaningful opportunity to

present a complete defense." In fact, she would have had two chances at getting possible exculpatory evidence.

*State v. Zoss*, 360 N.W.2d at 525.

Furthermore, in *Ginsberg v. Iowa Department of Transportation*, 508 N.W.2d 663 (Iowa 1993), the supreme court assumes without deciding Iowa Code section 321J.11 requires an individual to take the test requested by police officers before being allowed to exercise the right to an independent test. *Id.* at 664. The court stated, "[a]n arrestee cannot demand that the independent tests be performed *before* the test requested by the peace officer or that the State pay for the additional tests. *See* Iowa Code § 321J.11." *Id.* at 664 (emphasis added).

■ We find the two cases from our supreme court clearly guide our interpretation of Iowa Code section 321J.11. The legislature's clear intent, by its use of the words "in addition to," was that a defendant must submit to a state-administered chemical test before being allowed to demand an independent test. The officers correctly understood the statute when they refused to allow appellant to have a blood test because he refused to take the state-administered breath test. Therefore, jury instruction number nine correctly explained the law for the jury.

■ As long as a jury instruction correctly explains the law to the jury, a court may choose its own wording for the instruction. *State v. Doss*, 355 N.W.2d 874, 881 (Iowa 1984); *State v. Luter*, 346 N.W.2d 802, 811 (Iowa 1984). Therefore, the court could choose to use the word "allegedly" in its instruction. The court did not err in overruling appellant's objection to the instruction.

■ Appellant finally asserts the trial court erred in not granting a mistrial after the deputy referred to a previous OWI in his testimony. The statement, up to the time of appellant's objection, was "After we had made the arrest, Trooper Wellner had also found in the vehicle a previous O.W.I.—" In a hearing outside the presence of the jury, the court sustained the objection. The court then admonished the jury "to disregard the last statement made by the witness." Dur-

ing the noon recess, the court denied appellant's motion for a mistrial.

During the discussion concerning the motion for mistrial, appellant stated the court had sustained a motion in limine that no testimony concerning previous OWI's would be admitted. We find no evidence of the court's ruling on the motion in limine other than appellant's comment. The ruling on the motion, however, is not essential to our review of the court's denial of the motion for a mistrial.

The trial court has broad discretion when ruling on a motion for mistrial. *State v. Wade,* 467 N.W.2d 283, 285 (Iowa 1991) (*citing State v. Brown,* 397 N.W.2d 689, 699 (Iowa 1986)). We have long recognized the general sufficiency of cautionary instructions except in extreme cases. *State v. Breitbach,* 488 N.W.2d 444, 448 (Iowa 1992); *State v. Belieu,* 288 N.W.2d 895, 901–02 (Iowa 1980). In *Belieu,* the court identified several considerations that are important in determining if the prejudicial impact of inadmissible evidence can be mitigated adequately by a cautionary instruction: (1) the degree to which the defendant is able to protect himself against the prejudicial impact, (2) the extensiveness of the challenged testimony and the promptness with which the court deals with it, and (3) the strength of the state's evidence on the matter, which reduces its prejudicial value. *Belieu,* 288 N.W.2d at 901.

In *Belieu,* the court was faced with a situation where evidence of prior crimes was introduced by codefendants in their defense. The court found that the trial court abused its discretion when it overruled one defendant's motion to sever because the extensive and repeated references to prior crimes was extremely prejudicial and the defendant had no way to protect himself from its admission. We do not face a similar situation in this case. Appellant promptly objected before the testimony even specifically identified the previous OWI as pertaining to appellant. The court promptly admonished the jury to disregard the brief statement. Applying the factors from *Belieu,* we cannot say the cautionary instruction did not adequately protect appellant from the prejudicial effect of the testimony.

Appellant asserts that prejudice is presumed when error is found, citing *State v. Henze,* 356 N.W.2d 538 (Iowa 1984). *Henze* dealt with the effect of admitting hearsay evidence. It is not applicable to the case before us. When a trial court responds quickly to objectionable evidence, the defendant bears the heavy burden of demonstrating a clear abuse of discretion by the trial court. *State v. Brown,* 397 N.W.2d at 699 (*citing State v. Staker,* 220 N.W.2d 613, 617 (Iowa 1974)). Appellant has not met his burden to show the court's response to the testimony, admonishing the jury to disregard it, was insufficient. We find no evidence of prejudice in the record before us caused by the deputy's brief testimony concerning the previous OWI. Therefore, the trial court did not abuse its broad discretion by refusing to grant a mistrial.

After considering all issues presented, we determine any other issues the parties may have raised are either covered by this opinion or are without merit.

**AFFIRMED.**

HAYDEN, J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge, concurring in part and dissenting in part.

I concur in part and dissent in part.

I agree with the majority that the stop was justified if the testimony of the arresting officer is believed. I give weight to the fact findings of the trial court on the issue of credibility of witnesses, and I accept the officer's version of events and affirm on this issue.

I depart from the majority in their interpretation of Iowa Code section 321J.11. The issue is whether the statute directs the defendant had to have submitted to a chemical test requested by an officer before he was entitled to the independent test provided for in section 321J.11.

The majority considers this an issue of first impression[1] and looks to *State v. Zoss*, 360 N.W.2d 523, 525 (S.D.1985), and *People v. Dewey*, 172 Mich.App. 367, 372–73, 431 N.W.2d 517, 520 (1988), for guidance. In *Zoss*, the South Dakota court determined their statute required a defendant to take a state-administered test before allowing the defendant to have an independent test. In *Dewey*, the Michigan Court of Appeals made the same determination as to their statute.

The question is one of interpreting the Iowa statute. Decisions from other jurisdictions are instructive only where the language of the other states' statutes is the same or similar to the language of the Iowa statute.

Iowa Code section 321J.11, in relevant part, provides:

> The person may have an independent chemical test or tests administered at the person's own expense *in addition to any administered at the direction of a peace officer.* The failure or inability of the person to obtain an independent chemical test or tests does not preclude the admission of evidence of the results of the test or tests administered at the direction of the peace officer. . . .

Iowa Code § 321J.11 (1993) (emphasis supplied).

Nothing in this language gives any clear direction a driver's own test is contingent on the driver taking a test requested by an officer.

The words providing for an independent test are not preceded by a requirement that an officer's request for a test to be administered first be made.

These factors clearly distinguish the Iowa statute from the Michigan and South Dakota statutes.

The South Dakota statute provides:

> The person tested ... shall be permitted to have a physician, laboratory technician, registered nurse, physician's assistant or medical technologist of his own choosing administer the chemical analysis *in addition* to the one administered at the direction of the law enforcement officer.

*Zoss*, 360 N.W.2d at 524–25 (emphasis added).

The Michigan statute provides:

> A person who takes a chemical test administered at the request of a peace officer, . . .

*Dewey*, 431 N.W.2d at 510.

The Iowa legislature crafted the statute by first providing for the independent test before a reference was made to a state-ordered test. The language "in addition to *any*" test also conveys to me one may or may not be given. (Emphasis supplied.) Because *State v. Oakley*, 469 N.W.2d 681, 683 (Iowa 1991), appears to pave the way for the state's testing of a sample used by the defendant in a test, this negates any argument the state might make that it was prejudiced by this interpretation.

Furthermore, a driver who had only an independent test would be subject to revocation under Iowa Code section 321J.9.

---

1. *Ginsberg v. Iowa Dep't of Transp., Motor Vehicle Div.*, 508 N.W.2d 663 (Iowa 1993), in addressing the issue of refusal to take a blood test, the Iowa court in what appears to be dicta citing Iowa Code section 321J.11 says: "An arrestee cannot demand that the independent test be performed before the test requested by the police officer. . . ."