# IN THE COURT OF APPEALS OF IOWA

No. 22-0629
Filed July 13, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**SHANNAH RAE BANKSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Appanoose County, Rose Anne Mefford, District Associate Judge.

A defendant appeals the denial of her motion to suppress and subsequent conviction. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Tabor and Greer, JJ.

**GREER, Judge.**

Shannah Bankson appeals the district court's denial of her motion to suppress evidence, arguing the search exceeded the scope of her consent, and her subsequent conviction based on the fruits of that search. Because we find her consent was without restriction or limitation, we affirm.

On February 26, 2020, police received a call about "suspicious, burglary-type activity at a mobile home park" involving a black truck. Officers Robert Houser and Kenneth Reistroffer found the truck at a local convenience store. Two individuals, Steven—who owned the truck—and Bankson, came out of the store and started walking toward the truck before speaking with Officer Houser.[1] They admitted to being at the mobile home park together. Officer Houser asked if he and Officer Reistroffer could look inside the truck for "specific items"; both Steven and Bankson said "go ahead, yes," and Bankson opened the truck doors for the officers.

Officer Houser, Steven, and Bankson stepped away from the truck while Officer Reistroffer and a third officer searched the truck. At that point, Bankson asked, "What is it you guys are looking for exactly?" She followed that with, "Aren't we allowed to know 'cause we let you guys search the vehicle without a search warrant?" Officer Houser responded that they were involved in an investigation and were looking for "items." As the conversation progressed, Steven asked if the officers planned to search the whole truck, and Bankson added "I mean, obviously, whatever items you guys are looking for ain't gonna fit in my fucking purse,

---

[1] The interaction was captured on Officer Houser's body camera and the footage was admitted as evidence at the suppression hearing.

correct?" But, neither Steven nor Bankson asked officers to stop the search. During the search, inside a bag Bankson later stipulated was hers, officers found methamphetamine and various drug paraphernalia.

Bankson was charged with possession of a controlled substance—methamphetamine—third offense. She filed a motion to suppress the fruits of the vehicle search, arguing the search exceeded the scope of her consent and violated both her federal and state constitutional rights against warrantless search and seizure. The district court denied her motion, finding Bankson's consent "could [have] reasonably include[d her] backpacks or bags" and she did not "limit, revoke[,] or withdraw her consent" to the search at any time.

Following a bench trial on a stipulated factual record, Bankson was found guilty. She appeals, arguing the district court wrongly denied her motion to suppress. "We review the denial of a motion to suppress on constitutional grounds de novo." *State v. Abu Youm*, 988 N.W.2d 713, 718 (Iowa 2023). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *State v. McConnelee*, 690 N.W.2d 27, 30 (Iowa 2004) (citation omitted).

It is undisputed that the officers did not have a search warrant and that Bankson consented to at least some search of the truck and its contents. "[C]onsensual searches are a well-established exception to the warrant requirement and do not violate the Federal or State Constitution." *State v. Hauge*, 973 N.W.2d 453, 461 (Iowa 2022). And our supreme court has "long interpreted article I, section 8 coextensive with the Fourth Amendment in analyzing consent

searches," using a similar structure to evaluate the voluntariness of the consent.[2] *Id.* Contending that the State failed to recognize the Iowa Supreme Court's "shift in [its] approach to federal jurisprudence and Iowa Constitution article I, section 8 over the last twenty years," Bankson asks us to depart from precedent and create a new standard under the Iowa Constitution. But "[w]e are not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). So, we turn to established precedent to evaluate Bankson's motion to suppress.

"[C]onsent to a search may be limited or qualified," and "[l]aw enforcement authorities conducting the search are constrained by such limitations or qualifications." *McConnelee*, 690 N.W.2d at 30. "The scope of consent is determined by what a 'typical reasonable person [would] have understood by the exchange between the officer and the suspect.'" *Id.* (alteration in original) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).

Here, Officer Houser asked for permission to look for "specific items" in the truck—this terminology was vague and could include anything that might have been stolen from the mobile home. Similarly, Bankson's and Steven's blanket, unambiguous "yes" did not limit the search; it allowed the officers to search the

---

[2] There are slight differences. For instance, in determining if the search is voluntary, as required under both constitutions, we use a similar, totality-of-the-circumstances structure to evaluate voluntariness as the federal case law, though with some distinction in the factors analyzed to make that determination. *See Hague*, 973 N.W.2d at 461–62; *State v. Baldon*, 829 N.W.2d 785, 823 (Iowa 2013) (Appel, J., specially concurring) ("Our independent search and seizure cases emphasize the traditional requirement of particularity to cabin government discretion in the search and seizure context and engage in realistic assessment of the voluntariness of consent.").

whole truck and its contents. When Steven confirmed this, in the presence of Bankson, she asked follow-up questions, but she did not explicitly place any restrictions on the search or revoke the consent for the search. *See State v. Stanford*, 474 N.W.2d 573, 575 (Iowa 1991) ("However, in order to limit, revoke[,] or withdraw an initial grant of consent, the consenter must clearly inform the appropriate official that the initial consent has been limited, withdrawn[,] or revoked."). Her consent was clear and without parameters.

Bankson also argues that the officers misled her because they said they were looking for "specific items" before knowing if anything was stolen from the mobile home. She argues this invalidates the consent because "[l]aw enforcement agents may not obtain someone's consent to search by misrepresenting that they intend to look only for certain specified items and subsequently use that consent to justify a general exploratory search." *United States v. Jackson*, 598 F.3d 340, 348 (7th Cir. 2010). But the officers in this case did not lie to Bankson or Steven; the officers informed them of concerns of burglary at the mobile home, asked for permission to search the truck for evidence of stolen items, and then searched the car for that evidence. Thus, we find Bankson consented to the search without limitation.

We affirm the district court's denial of Bankson's motion to suppress and her subsequent conviction.

**AFFIRMED.**