STATE of Iowa, Plaintiff–Appellee,

v.

Steven HOWELL, Defendant–Appellant.

No. 95–1308.

Court of Appeals of Iowa.

Oct. 25, 1996.

Linda Del Gallo, State Appellate Defender, and James G. Tomka, Assistant State Appellate Defender, for defendant–appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, John P. Sarcone, County Attorney, and Karen Romano, Assistant County Attorney, for plaintiff–appellee.

Heard by SACKETT, C.J., and HABHAB and VOGEL, JJ.

HABHAB, Judge.

Steven Roy Howell was charged with third-degree sexual abuse for allegedly sexually assaulting Michelle Ann Dickson in a secluded park after meeting her at a bar in Ankeny, Iowa. Howell filed a motion in limine requesting the exclusion of the testimony of Jamie Keifer, a victim of a prior sexual assault by Howell. The court, Judge Needles, denied the motion in limine finding sufficient "factual similarities between the prior crime and the present case." The court concluded the prior act was "relevant to prove intent, lack of consent, plan, motive, and absence of mistake" and the "probative value is [not] substantially outweighed by the dangers of unfair prejudice." The trial court, Judge Paulsen, however, precluded the State from presenting evidence of Howell's prior conviction and gave the jury a limiting instruction as to the proffered purpose of the prior act testimony.

At trial, the sole issue was whether Dickson consented to sexual intercourse with Howell. Dickson testified she met Howell at a bar while with her friend Sandie Sue Kneusel. Howell joined the two women at their table and he offered to buy them a drink. Kneusel felt ill and decided to return home. Howell asked to accompany Dickson to Des Moines to meet her friends and they left the bar together. En route to the bar, Howell asked Dickson to take him to his truck, which he told her was located at his house. He ultimately directed her to Jester Park. There he assaulted her by "smacking" her up against the window and putting his hand over her mouth. Dickson testified he said, "Shut up and I won't hurt you." She testified a struggle ensued, eventually ending outside the car on wet, muddy ground. Dickson testified she repeatedly pleaded with him to stop, she screamed, and she believed he was going to snap her neck. After forcing sexual intercourse, Howell grabbed her car keys and told her he would drive because she could not be trusted. Dickson also testified to the bruises she sustained as a result of the attack.

Jamie Keifer testified Howell sexually assaulted her in 1987 under similar circumstances. Keifer met Howell at a bar. He offered to buy her a drink and she eventually left with him with the intent to run some errands and then return to the bar. Instead, Howell drove Keifer to a remote area of Jester Park. A struggle ensued, eventually ending outside of the car. Keifer sustained bruises all over her body and she believed Howell was going to kill her. Howell attempted to force Keifer to engage in sexual intercourse. Howell was unable to sustain an erection so he then forced Keifer to perform fellatio on him. Howell then left her at Jester Park.

Kneusel and Jeffrey Harlan Vreeman, Kneusel's friend, testified on behalf of the State. They both testified they did not see any physical contact between Dickson and Howell at the bar. Kneusel and Vreeman testified Dickson came to Kneusel's home hours later and was muddy, wet, shaking, and crying hysterically. Dickson told Kneusel and Vreeman she was raped by Howell. Dr. Alan D. Heberer also testified he examined Dickson and observed tenderness and redness on various parts of her body, likely caused by direct trauma.

Paul J. Bush, criminalist for the Department of Criminal Investigation, testified the pubic hairs recovered from Dickson were similar to Howell's known pubic hairs. Howell's counsel then objected to any further testimony regarding the identity of the source of seminal fluids or other forensic evidence because Howell admitted to having sexual intercourse with Dickson on the night in question. The trial court overruled the objection and Bush testified about the DNA testing and conclusions regarding identity. He also testified on cross-examination there were two pubic hairs he could not identify as similar to either Dickson or Howell.

Howell testified he met Dickson at the bar, and Kneusel and Dickson joined him at his table. They spoke for a while and he offered to buy them a drink. He testified Dickson kissed him twice while at the bar, and they both were under the influence of alcohol. Howell accepted Dickson's invitation to join her friends at another bar. Howell fell asleep during the drive and when he awoke he did not know where they were. Dickson made sexual advances while they were in the

car, which proceeded outside of the car at her request. They engaged in consensual sexual intercourse on the "very muddy" ground, and neither sustained injury.

The jury returned a guilty verdict. Howell appeals. He argues the trial court abused its discretion in admitting evidence of prior acts under Iowa Rule of Evidence 404(b). He also argues he was denied effective assistance of counsel because trial counsel did not object prior to the entire testimony of Paul Bush because identity was not an issue. Howell further urges there is insufficient evidence to support a conviction, because the evidence raises only suspicion, conjecture, and speculation.

■ *I. Evidence Admitted Under Iowa Rule of Evidence 404(b).* Howell contends the trial court erred in allowing Keifer's testimony under Iowa Rule of Evidence 404(b). Before trial Howell made a motion in limine seeking, among other things, to exclude testimony of Keifer and Detective Marshall, who had investigated the sexual assault charges against Howell involving Keifer. After a hearing the trial court, Judge Needles, denied the motion.

In making its determination, the trial court noted it had considered the depositions of Keifer and Dickson and went on to make the following findings:

> In both of these cases the defendant met the women in a bar and bought them drinks. He talked them into leaving the bar with him. He directed or drove them to a remote location in Northwest Polk County where he was familiar. He did not threaten to kill them but told them he would hurt them if they did not cooperate. They both received bruises when they were pinned down by their arms and when he raped them.

> After reviewing both of these depositions the court concludes there are factual similarities between the prior crime and the present case as set out above. Moreover in both cases the defendant attempted the assault in the vehicle but eventually wrestled the victims to the ground outside the vehicle and held them there during the assault.

> The court further concludes that the prior incident is relevant to prove intent, lack of consent, plan, motive and absence of mistake.

> Moreover the court concludes that the evidence's probative value is substantially outweighed by the dangers of unfair prejudice.

Howell renewed his objection to the admission of evidence of Keifer's assault at trial. The court reaffirmed the pretrial ruling, but it determined a cautionary instruction would be issued to the jury. The court also prohibited any mention of Howell's conviction of sexual abuse as a result of his assault of Keifer.

■ Howell contends it was an abuse of discretion for the trial court to allow Keifer to testify as her testimony was irrelevant and prejudicial. On evidentiary issues we review for abuse of discretion. *State v. Schaffer,* 524 N.W.2d 453, 455 (Iowa App.1994). In order to show an abuse of discretion, one generally must show the court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Id.*

Rule 404(b) provides:

**(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ The purposes listed in the rule are not exclusive. *State v. Plaster,* 424 N.W.2d 226, 228 (Iowa 1988).[1] To admit evidence under rule 404(b), the evidence must be relevant and there must be clear proof the individual against whom the evidence is offered committed the prior acts. *State v. Zeliadt,* 541 N.W.2d 558, 560–61 (Iowa App.1995); *see also State v. Jones,* 464 N.W.2d 241, 243

---

1. Appellant invites us to overrule *State v. Plaster,* 424 N.W.2d 226 (Iowa 1988). We, of course, are bound to follow the decisions of the Iowa Supreme Court.

(Iowa 1990); *State v. Schaffer*, 524 N.W.2d 453, 455 (Iowa App.1994). In addition, relevant evidence may be inadmissible if the probative value of the evidence is outweighed by the danger of unfair prejudice. *Zeliadt*, 541 N.W.2d at 561; Iowa R. Evid. 403.

■ We first consider whether the evidence concerning Howell's sexual assault of Keifer is relevant. The basic test of relevancy is whether the evidence offered would make the desired inference more probable than it would be without the evidence. *State v. Casady*, 491 N.W.2d 782 (Iowa 1992). It follows that the facts of Howell's assault against Keifer must be sufficiently similar to the assault upon Dickson so that a reasonable inference can be made from Howell's intent to commit sexual abuse in the earlier assault that he also had the intent to commit sexual abuse against Dickson. *See State v. Casady*, 491 N.W.2d at 785; *see also State v. Spargo*, 364 N.W.2d 203, 209 (Iowa 1985); *State v. Fetters*, 202 N.W.2d 84, 92 (Iowa 1972); *State v. Coen*, 382 N.W.2d 703, 705 (Iowa App.1985).

As noted by the trial court, there are numerous factual similarities between Howell's prior assault of Keifer and the present case. In both cases, Howell met the women in a bar and represented himself as a person with money and influence. He offered to purchase drinks for them. He talked them into leaving the bar with him. He directed or drove them to a remote location in Jester Park unfamiliar to both women. He attempted to sexually assault each woman in the vehicle. He then wrestled with each in the vehicle until eventually pinning them down outside of the vehicle. In Howell's assault of Keifer, he attempted to force her to have sexual intercourse but could not sustain an erection. He then forced her to perform fellatio on him. In the present case, Howell force Dickson to have intercourse with him on the ground outside the vehicle. Howell told each woman he would hurt them if they did not cooperate. They both feared that Howell would kill them and both received bruises as a result of the attack.

■ In the present case, the crucial issue was whether Dickson consented to engage in sexual intercourse with Howell. We agree with the trial court that the evidence of Howell's prior assault of Keifer is relevant as bearing on his intent to commit sexual abuse, lack of consent on the part of Dickson, plan, motive, and absence of mistake. Prior bad acts evidence with a different victim is properly admitted where the evidence tends to demonstrate a sexual pattern engaged in by the defendant. *Zeliadt*, 541 N.W.2d at 561. We find that Howell's prior assault of Keifer was sufficiently similar to the case at hand and no abuse of discretion occurred on the part of the trial court in this regard.

■ We next consider whether the probative value of the evidence is outweighed by the danger of unfair prejudice. *Zeliadt*, 541 N.W.2d at 561; Iowa R. Evid. 403. In making this determination we consider the following factors:

(1) the actual need for the evidence in view of the issues and the other available evidence, (2) the strength of the evidence showing that the prior bad acts were committed by the accused, (3) the strength or weakness of the prior bad acts evidence in supporting the issue sought to be proven, and (4) the degree to which the jury will probably be roused by the evidence improperly.

*Zeliadt*, 541 N.W.2d at 562 (citing *Coen*, 382 N.W.2d at 707). However, "[R]ule 403 does not provide protection against all evidence that is prejudicial or detrimental to one's case; it only provides protection against evidence that is *unfairly* prejudicial." *Plaster*, 424 N.W.2d at 231.

Dickson was the only witness to the assault. *See Zeliadt*, 541 N.W.2d at 562. The probative value of Keifer's testimony was strong as Howell was convicted of sexual assault in the third degree after assaulting her; therefore, it is clear that the assault occurred and that Howell was the actor. *See State v. Casady*, 491 N.W.2d 782, 786 (Iowa 1992). As the jury was given cautionary instructions regarding the prior bad act,

safeguards were taken to assure the jury would not use the evidence improperly.[2]

We conclude the probative value of Keifer's testimony was not outweighed by the danger of unfair prejudice. The trial court did not abuse its discretion in admitting the prior bad acts testimony provided by Keifer.

**II. Ineffective Assistance of Trial Counsel.** Howell alleges that he received ineffective assistance of counsel when his trial counsel failed to object to the testimony of Paul Bush, Criminalist for the Department of Criminal Investigations, at his first opportunity.

Our review of an allegation of ineffective assistance of counsel is de novo. *State v. Howes,* 525 N.W.2d 874, 876 (Iowa App.1994). A defendant has the burden of proving by a preponderance of the evidence his attorney did not perform an essential duty and, as a result, he was prejudiced. *Id.* To demonstrate prejudice a defendant must prove there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *State v. Tracy,* 482 N.W.2d 675, 680 (Iowa 1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

In alleging ineffective assistance, a defendant must overcome the strong presumption counsel was competent. *State v. Ray,* 516 N.W.2d 863, 865 (Iowa 1994). A reviewing court can deny an application for postconviction relief based on the failure to prove prejudice, without deciding whether counsel's representation was deficient. *See State v. McKettrick,* 480 N.W.2d 52, 56 (Iowa 1992); *Taylor v. State,* 352 N.W.2d 683, 685 (Iowa 1984).

At trial Howell's defense was that Dickson consented to engage in sexual intercourse with him. However, before defendant testified as to Dickson's alleged consent, the State offered testimony from criminologist, Paul Bush. During his testimony Bush noted that three of the pubic hairs recovered from Dickson were similar to Howell's known pubic hair. He also testified that DNA testing was performed on a semen sample recovered from the victim. Defense counsel then objected and stated that as the defendant was willing to stipulate that he and Dickson had sexual intercourse, Bush's testimony was redundant. The trial court overruled the objection. On appeal Howell contends that Bush's testimony added nothing relevant to the trial and unnecessarily inflamed the jury.

A defendant is not entitled to perfect representation but rather only that which is within the range of normal competency. *Karasek v. State,* 310 N.W.2d 190, 192 (Iowa 1981). We find that Howell's trial counsel did not breach an essential duty in failing to object at the outset of Bush's testimony. Furthermore, there is no reasonable probability that but for trial counsel's failure to object at the outset of the testimony, the result of the proceeding would have been different. Howell has not carried his burden to prove his counsel was ineffective.

**III. Sufficiency of the Evidence.** Howell alleges that when considering the record as a whole, the evidence does not create anything more than speculation, suspicion, or conjecture and does not raise a fair inference of guilt. Howell contends the record establishes that Dickson initiated the sexual contact with Howell and fully consented to engage in sexual intercourse with him. We disagree.

When reviewing criminal convictions for sufficiency of the evidence, we review the evidence in a light most favorable to the State. *State v. McGrew,* 515 N.W.2d 36, 37 (Iowa 1994). A conviction is reversed only if there is no substantial evidence in the record supporting the verdict or the verdict is clear-

---

2. Instruction 14 provided:

Evidence has been received concerning another wrongful act alleged to have been committed by the defendant. The defendant is not on trial for that act.

This evidence must be shown by clear proof, and can only be used to show intent, plan, common scheme or lack of consent.

If you find another wrongful act (1) occurred, and (2) was committed in the same or similar manner as the crime charged, so as to form a reasonable connection between them, then and only then may such other act be considered for the purpose of establishing intent, plan, common scheme or lack of consent.

ly against the weight of the evidence. *Id.* at 37–38.

Substantial evidence is evidence which could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* at 38. A fair inference of guilt with respect to each element of the crime charged is sufficient to uphold a verdict. *Id.* We consider all of the evidence, not merely that supportive of the conviction, in determining the sufficiency of the evidence to support a guilty verdict. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980).

Our review of the record reveals there is substantial evidence to support Howell's conviction. A great deal of the testimony of the various witnesses has been detailed earlier in this opinion. We recognize there is conflicting testimony in the record, but the jury is free to believe or disbelieve any or all of a witness's testimony. *See State v. Frake,* 450 N.W.2d 817, 819 (Iowa 1990). We find there was sufficient evidence to convince a rational trier of fact that Howell sexually assaulted Dickson.

**AFFIRMED.**