STATE of Iowa, Plaintiff–Appellee,

v.

Donald W. LAWRENCE, Defendant–Appellant.

No. 95–777.

Court of Appeals of Iowa.

Nov. 27, 1996.

Linda Del Gallo, State Appellate Defender, and Annette L. Hitchcock, Assistant State Appellate Defender, for Defendant–Appellant.

Thomas J. Miller, Attorney General, Susan M. Crawford, Assistant Attorney General, William Byers, County Attorney, and Wayne M. Reisetter, Assistant County Attorney, for Plaintiff–Appellee.

Considered by HABHAB, P.J., and STREIT and VOGEL, JJ.

HABHAB, Presiding Judge.

In the early morning hours of August 2, 1994, defendant Donald W. Lawrence broke into the residence of his ex-wife, Darlene Davis, and their son, William Lawrence. Defendant demanded his son make two other occupants of the apartment leave. He then ordered his son to lock and barricade the apartment door. Defendant then held his ex-wife and son hostage for approximately three hours.

Defendant held a knife to Darlene's neck and repeatedly threatened to kill her and William. His statements indicated he expected police officers to arrive, and after they did he constantly moved around the apartment so they would not know where he was sitting.

While holding Darlene and William hostage, defendant directed William to make coffee and answer phone calls from the police. He made Darlene cut up photographs of some of her male friends. Defendant told both of them, "You guys might as well lay down and go to sleep because this is going to be a long night." At one point defendant took two Tylenol tablets after complaining of a headache.

After negotiations between defendant and the police proved unsuccessful, the police entered the apartment by force and secured defendant. Defendant was charged with first-degree burglary and second-degree kidnapping. Defendant filed a notice of intent to rely on the defenses of diminished capacity or intoxication.

Prior to the trial, defendant filed a motion in limine seeking to exclude, among other things, testimony about his recent release from prison. The trial judge granted the motion with respect to the State's opening argument and case-in-chief.

During the State's direct examination of William, inquiry was made into his phone conversations with police during the hostage situation. In responding, William mentioned "an officer was talking, something about prison...." Defense counsel objected and the

prosecutor rephrased his question. The record reflects that outside the presence of the jury defense counsel requested the statement be stricken from the record. Counsel then withdrew his request to have the jury instructed to disregard the statement in order to avoid calling further attention to the remark.

During the direct examination of Deputy Sheriff Kelly Sutten, the deputy was asked about the substance of his second phone conversation with defendant. The deputy responded, "He advised me that he wasn't going to go back to the joint— -." Defense counsel objected and moved for a mistrial based on the cumulative effect of the testimony of William and the deputy. The motion was denied. Defense counsel again opted not to have the court issue a cautionary instruction to the jury. With the approval of defense counsel, the jury was informed by the court that the answer had been stricken from the record and to disregard the statement.

During trial, the testimony of Sergeant Probst of the Iowa State Patrol was abruptly interrupted when he was called away to assist with an emergency elsewhere. The jury was aware from his testimony that Sergeant Probst was a member of the State Patrol's tactical team which worked on high-risk and hostage situations. Defendant also moved for a mistrial based on this interruption and the two statements regarding prison. The court found the interruption was not prejudicial and the motion was denied.

Defendant moved for a judgment of acquittal at the close of the State's case and again after the close of all of the evidence. He argued he was intoxicated at the time of the offenses and there was insufficient evidence to prove specific intent. The motions were denied. Defendant was found guilty on both counts.

Defendant filed a motion for a new trial which was denied. On appeal, defendant challenges the denial of both of his motions for mistrial and the sufficiency of the evidence to support the specific intent elements of both the burglary and kidnapping offenses.

**I. Motions for Mistrial.** Trial courts have considerable discretion in passing on mistrial motions, and reversal is proper only upon a showing that discretion was abused. *State v. Ware,* 205 N.W.2d 700, 702 (Iowa 1973). To the extent defendant has raised constitutional issues, our review is de novo. *Nichol v. State,* 309 N.W.2d 468, 470 (1981). We have long recognized the general sufficiency of cautionary instructions except in extreme cases. *State v. Mahoney,* 515 N.W.2d 47, 51 (Iowa App.1994). When the trial court responds quickly to objectionable evidence, the defendant bears a heavy burden of demonstrating a clear abuse of discretion on the part of the trial court. *State v. Keys,* 535 N.W.2d 783, 786 (Iowa App.1995); Mahoney, 515 N.W.2d at 51.

**a) Motion for Mistrial Based on Violations of Motion in Limine.** Defendant contends the trial court abused its discretion in failing to grant his motion for mistrial after evidence regarding his recent release from prison was referenced during the testimony of William and Deputy Sutten, despite an order which precluded the State from mentioning this information in its opening statement and case-in-chief.

The court was willing to give a curative instruction after William's testimony in addition to striking the response from the record. The defense counsel made a strategic decision not to have the court give the cautionary instruction. After the testimony of the deputy, the defense counsel made a motion for mistrial outside the presence of the jury. The court indicated it would be willing to issue a curative instruction if defendant so desired.[1] However, after consulting with de-

---

1. The record reflects the following regarding these motions:

    THE COURT: [C]oncerning the comment, the answer of 'back to the joint,' the court finds that matter can be resolved by the court striking the answer. The court is willing if the defendant desires a more curative instruction to consider that. The court would be willing to instruct the jury also that it needs to remember that the defendant is on trial only for acts alleged to have occurred on August 26, 1994.

    The court is going to deny the defendant's motion for mistrial and, Mr. Sheeley, I'm going to leave it to you and your client to finally

fense counsel, and with his approval,[2] the court struck the statement and made the following statement to the jury:

> Members of the jury, before we took our recess Kelly Sutten was in the witness chair testifying. The court is striking the last answer that was given by that witness, I'm instructing you to disregard that testimony. . . .

Generally, the striking of an improper response, and an instruction to the jury to disregard the response, will prevent prejudice. *Keys*, 535 N.W.2d at 786. We find that these curative actions, taken with the consent of defense counsel, were adequate. Defendant has not met his burden of establishing the trial court abused its discretion. Furthermore, in our de novo review of the record, we find defendant was not denied his constitutional right to a fair trial.

**b) Motion for Mistrial Based on the Interruption of Sergeant Probst.** Defendant contends the trial court abused its direction when it failed to grant his motion for mistrial based on a state trooper's interruption of Deputy Sutten's testimony.[3]

In denying the motion, the court stated, "The Court finds that the situation with the state trooper testifying does not create prejudice to the defendant which would allow the Court to mis-try this case and declare a mistrial at the defendant's request." The court also noted there was no "intimation that they [the state troopers] are going to

answer a situation that was caused by [the defendant]."

In the presence of the jury, the court explained the interruption:

> [M]embers of the jury, before we took our recess Kelly Sutten was in the witness chair testifying. The court is striking the last answer that was given by that witness, I'm instructing you to disregard that testimony. Now you will note that Kelly Sutten is no longer in the witness stand, I'm going to try to explain that to you. One of the state troopers who had to leave has been able to return so we are going to take his testimony at this time since he is available now. It is my understanding that Kelly Sutten will return later so he can complete his testimony. So if that brings you up to speed so you understand where we are, we will now hear from the State's next witness. . . .

It is axiomatic that a trial court is better equipped than appellate courts can be to determine whether prejudice occurs. *State v. Anderson*, 448 N.W.2d 32, 33 (Iowa 1989). This is because the trial court is a firsthand observer of both the alleged misconduct and any jury reaction to it. *Id.* We find defendant has not shown abuse of discretion on the part of the trial court, and the curative action taken by the trial court was appropriate. Furthermore, in our de novo review, we find defendant was not denied his constitutional right to a fair trial by the trial court's refusal to grant his motion for mistrial based on this interruption.

---

determine whether you wish to have the court when the jury returns notify the jury that the witness's last answer was stricken by the court and that they are instructed to disregard that answer, and also if the defendant desires any more of a curative instruction, or whether the defendant wishes to have the court not issue any curative instruction. . . .

2. The record reflects, in pertinent part:
   MR. SHEELEY: [Y]our honor, if the court would just simply advise the jury to disregard the witness's last statement and strike that statement from the record.
   THE COURT: All right, counsel.

3. The court made the following record regarding its own recollection of the interruption:
   THE COURT: Counsel, as I remember it, I was first made aware that something was go-

ing on when I heard a noise either from chambers or from the corridor outside the courtroom, my recollection was that the door opened, our court attendant, Cindy, came in and was approaching the bench and had gone almost to the edge of the bench to let me know, I assumed, that the situation had escalated and this witness had to be excused when another individual appeared at the courtroom door and made some statement, and I'm not even too sure what he said, but he certainly appeared anxious and that there was a situation.
   MR. SHEELEY: Okay, and that individual then the jury could have easily seen.
   THE COURT: I'm sure the jury did see that individual.
   MR. REISETTER: That's acceptable.
   MR SHEELEY: I'm satisfied with that.

**■ *II. Sufficiency of the Evidence.*** Defendant contends his intoxication precluded him from forming the specific intent necessary to commit the charged crimes. In order to establish second-degree kidnapping, the State had to prove defendant had the specific intent to use Darlene as a shield or hostage and to inflict serious injury upon her. *See* Iowa Code §§ 710.1, 710.3 (1993).

A jury's finding of guilt is binding upon this court unless we conclude the record lacks substantial evidence to support such a finding. *State v. Bush*, 518 N.W.2d 778, 779 (Iowa 1994).

When reviewing criminal convictions for sufficiency of the evidence, we review the evidence in a light most favorable to the State. *State v. McGrew*, 515 N.W.2d 36, 37 (Iowa 1994). A conviction is reversed only if there is no substantial evidence in the record supporting the verdict or the verdict is clearly against the weight of the evidence. *Id.* at 37–38. Substantial evidence is evidence which could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* at 38. A fair inference of guilt with respect to each element of the crime charged is sufficient to uphold a verdict. *Id.* We consider all of the evidence, not merely that supportive of the conviction, in determining the sufficiency of the evidence to support a guilty verdict. *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980).

The State presented substantial evidence of defendant's specific intent to commit the charged crimes. Evidence presented established defendant broke into the home of Darlene and William in the early morning hours of August 26, 1994. Darlene testified defendant entered her bedroom, turned on the light, put a knife to her throat, and said, "Get up, bitch." Defendant then woke William and ordered him to get two other persons out of the apartment, and then to lock the door and barricade it.

Defendant forced Darlene into the living room with the knife and made her sit between his legs. Darlene and William both testified defendant told them he was going to kill them and himself several times. Defendant ordered Darlene to cut up photographs of her male friends. He made several statements that he expected the police would be arriving at any time, and when the police arrived he continually moved around the apartment so the police would not know where they were sitting.

Officer Nyron was one of the officers at the scene. He testified he heard a voice, which he recognized as that of defendant, state, "Get the f— away, I have a knife at her throat," and "William, you are going to watch your mom die."

In his defense, defendant presented two expert witnesses who testified that he suffered from alcoholism. Two of defendant's family members also testified he was intoxicated when they saw him earlier that night. Defendant also points out Darlene and William both testified they noticed defendant had been drinking when he first entered the apartment.

**■** "The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). Evidence of temporary intoxication is simply evidence to be considered by the jury on the issue of intent. *State v. Collins*, 305 N.W.2d 434, 437 (Iowa 1981). Even if the jury found defendant was intoxicated, "voluntary intoxication does not excuse one for the criminal consequences of his conduct." *Id.*

In reviewing the evidence in a light most favorable to the State, we find there is substantial evidence to support defendant's conviction.

**AFFIRMED.**