STATE of Iowa, Appellee,

v.

Michael A. DAVIS, Appellant.

No. 97–0258.

Court of Appeals of Iowa.

June 24, 1998.

Linda Del Gallo, State Appellate Defender, Christopher Cooklin, Assistant State Appellate Defender, and Michael A. Davis, Anamosa, pro se, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General,

William E. Davis, County Attorney, and Joseph Grubisich, Assistant County Attorney, for appellee.

Heard by SACKETT, P.J., and HUITINK and STREIT, JJ.

STREIT, Judge.

Defendant Michael Davis appeals the trial court's denial of his motions for acquittal from his convictions for first-degree kidnaping and second-degree sexual abuse. Because sufficient evidence exists to support both convictions, we affirm the trial court's denial of the defendants motions.

## I. Background Facts & Proceedings.

Davis and Barbara Smith lived together in an apartment. Andre Bomar lived in the apartment with them.

On September 14, 1996, Davis and Smith came home from a party. Bomar, his girlfriend, Keela Hubert, and her daughter were sleeping in the living room. Smith decided to take a bath. While the bath was running, she went into the bedroom where Davis was lying naked on the bed. Davis asked Smith to have sex. Smith said she would rather take a bath. An argument ensued and Davis yelled at her and told her to move out. Smith went in to the bathroom to shut off the water. When she returned to the bedroom, Davis pushed her on the bed and began to suffocate her by pushing her head onto a pillow and wrapping a sheet around it. While her head was enshrouded by the pillow and sheet Davis pushed Smith to the floor and pulled off her shirt, jeans, and undergarments. Smith estimated she was on the floor for approximately ten or fifteen minutes.

Smith temporarily freed herself and went into the bathroom. Davis followed her and pinned her between the bathroom wall and the commode. While on top of her, Davis formed a fist and thrust it inside her vagina, resulting in severe lacerations. Davis told Smith to get into the bathtub because he was going to kill her. He placed her head under-

water for several seconds. Davis then tried to stab Smith with scissors. Smith freed herself and ran into the living room.

Davis ran after Smith and yelled at Bomar and Hubert to leave the apartment. When Davis opened the door to the living room, Smith bolted out the door into the street. Davis chased Smith and threatened to throw a grocery cart on top of her if she did not return to the apartment. Davis grabbed Smith by the arms and led her back to the apartment while threatening to knock her unconscious with a skillet. Smith sat in a chair and Davis lay on top of her. Davis continued to brutally beat Smith and hold her captive until the police arrived and arrested Davis.

Davis was charged with second-degree sexual abuse, first-degree kidnaping, and attempted murder. The jury found him guilty of first-degree kidnaping, second-degree sexual abuse, and aggravated assault. The district court dismissed the second-degree sexual abuse count because it merged with the kidnaping charge. He filed motions for judgment of acquittal on the kidnaping and sexual assault convictions. His motions were denied. He was sentenced to life in prison on the kidnaping charge, and two years on the aggravated assault charge. Davis appeals.

## II. Standard of Review.

Davis preserved his challenge to the sufficiency of the evidence to support the verdicts of kidnaping and sexual assault by motioning for judgment of acquittal on both convictions. The appellate scope of review from the denial of such a motion is well established:

[R]eview of a substantial evidence claim is on error. [An appellate court is] bound by the jury verdict unless the verdict is not supported by substantial evidence. In making this determination, [the court will] consider all the evidence in the light most favorable to the State. We accept all legitimate inferences that may fairly and reasonably be deducted from the evidence. Evidence is substantial if it could convince a rational fact finder that the defendant is

guilty beyond a reasonable doubt. Direct and circumstantial evidence are equally probative. Evidence, whether direct or circumstantial, must however do more than create speculation, suspicion or conjecture.

*State v. Sanborn,* 564 N.W.2d 813, 815–16 (Iowa 1997)(quoting *State v.Bayles,* 551 N.W.2d 600, 608 (Iowa 1996)).

### III. Evidence Supporting the Kidnaping Conviction.

■ Davis contends the district court erred in denying his motion for judgment of acquittal on the kidnaping conviction. He argues there was insufficient evidence he kidnaped Smith.

Iowa Code section 710.1 (1997) states:

A person commits kidnaping when he or she either confines ... or removes a person from one place to another, knowing that he or she has neither the authority nor the consent of the other to do so; provided, that to constitute kidnaping the act must be accompanied by one or more of the following:

3. The intent to inflict serious injury upon such person, or to subject the person to a sexual abuse.

■ Iowa case law has further set out the circumstances in which confinement of another person rises to the level of kidnaping. In *State v. Mead,* the supreme court emphasized not every case involving a seizure by a defendant of a victim during the commission of a crime involved sufficient confinement to constitute kidnaping. 318 N.W.2d 440, 445 (1982). Cases subsequent to *Mead* established several factors to consider when distinguishing between a seizure and confinement which rises to the level of kidnaping.

■ First, in order to "confine" another person in violation of Iowa Code section 710.1, the character of the confinement must exceed what is inherently incident in the underlying felony. *State v. McGrew,* 515 N.W.2d 36, 39 (Iowa 1994). For example, the supreme court noted in *State v. Rich,* the binding of the victim's hands behind her back was not necessary to commit sexual abuse or a normal incident of that offense. 305 N.W.2d 739, 745–46, (1981).

■ A second factor to consider is the time period the confinement lasts. *See State v. Griffin,* 564 N.W.2d 370, 373 (Iowa 1997). While no minimum period of confinement is required to convict a defendant of kidnaping, it is more likely that a confinement which lasts beyond the time period it takes to commit the underlying crime is kidnaping. *See McGrew,* 515 N.W.2d at 39. For example, in both *Marr* and *Mead,* in which kidnaping convictions were overturned, the duration of the confinement lasted no longer than the time required to commit the underlying offenses. *See State v. Marr,* 316 N.W.2d 176, 177–78 (Iowa 1982); *Mead,* 318 N.W.2d at 441–42. In *McGrew,* however, where the kidnaping conviction was upheld, the victim was confined for approximately four hours. *McGrew,* 515 N.W.2d at 39; *see also Griffin,* 564 N.W.2d 370, 373.

A third factor is whether the defendant has selected a secluded location in which to confine the victim. Secluding the victim lessens the risk of detection and further increases the risk of harm to the victim. *Id.* Seclusion of the victims were factors in determining kidnaping occurred in McGrew, where the defendant confined his victim in her own bedroom in the middle of the nighttime hours; see *id.,* and in *Griffin,* where the victim was confined in a motel room and forbid contact with others. *See Griffin,* 564 N.W.2d 370, 373.

A fourth factor is whether the victim believed her captor possessed a weapon and whether the victim felt her life in danger. See *McGrew,* 515 N.W.2d at 39.

Finally, whether the defendant significantly facilitates escape for his victim following the commission of the underlying offense is a factor. *Id.*

Applying these factors to this case, ample evidence exists in the record from which a rational trier of fact could conclude Davis' confinement of Smith was kidnaping.

The character of the Davis' confinement of Smith exceeded that inherent in the commission of sexual abuse. The act which the jury considered sexual abuse was Davis pinning down Smith with his knees and, while on top of her, thrusting his fist into her vagina. Smith was not confined by Davis for the short time it took to commit this act, however. Before the incident Davis had grabbed Smith and attempted to suffocate her. As Smith tried to free herself from Davis he continually pursued her and pushed her down. After the sexual act, he hit her with a broomstick and struck her with a brass object. Smith continually tried to flee. Again and again Davis chased Smith, dragging her back to a location where he could beat her. Not only did the character of these events exceed what inherently accompanies sexual abuse, but the time of the confinement did as well. She was confined for at least thirty minutes before the act and at least that after the sexual abuse.

The defendant took specific attempts to seclude Smith and cut off her contact with others. After abusing and confining her and after she had made repeated attempts to escape, Davis left her in the bathroom and told the house guests to leave and not come back. While Davis was telling the house guests to leave, Smith escaped outside. Davis' neighbor saw the two outside and saw Davis hitting, grabbing Smith by her hair, pinning her to the ground, and dragging her back into his apartment. Davis' continual efforts to seclude Smith from others decreased the risk of Davis being detected and increased the risk of Smith being harmed.

Davis severely beat Smith. He possessed and used many weapons which placed her life in danger. Davis used his teeth, his fist, a grocery cart, pillow, fan, rocking chair, radio, skillet, pen, and scissors as weapons. Smith was in fear for her life. Davis told her he was going to kill her. At different points during the beating he attempted to drown her, suffocate her, and threatened to knock her unconscious.

Finally, Davis decreased Smith's chances of escape by disrobing her. Each time she tried to escape he pursued her and thwarted her attempt. At one point, she escaped from the bathroom to the living room. He dragged her back to the bathroom and attempted to drown her. At another point, she escaped to the outdoors and he dragged her back into the apartment. The brutal beatings did not end until the police came to the door. Smith rushed to hide behind the police officer.

As these facts show, Davis' confinement of Smith was vastly more than a "seizure." For these reasons Davis' challenge to the sufficiency of the evidence to support his kidnaping conviction is rejected.

### IV. Evidence Supporting the Sexual Abuse Charge.

■■■■ Davis contends the district court erred in denying his motion for judgment of acquittal on the sexual abuse charge. Davis asserts that under the standard set forth in *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994), his conviction should be reversed. In that case the supreme court held for contact to constitute a sex act it must be between a specified body part and must be sexual in nature. *Id.* The sexual nature of the contact is determined by several factors including: (1) whether the contact was made to satisfy the sexual desires of the defendant;[1] (2) the relationship between the defendant and the victim; (3) whether anyone else was present; (4) the length of the contact; (5) the purposefulness of the contact; (6) whether there was a legitimate, nonsexual purpose for the contact; (7) where and when the contact took place; and (8) the conduct of the defendant and victim before and after the contact. *State v. Pearson*, 514 N.W.2d at 455. When deciding this issue, "[c]ommon sense and reasonableness will protect innocent persons from arbitrary perversion of the sexual abuse laws." *Id.* at 456.

The vagina is a specified body part. The question is whether Davis' contact with Smith's vagina was sexual in nature.

---

1. However, the lack of motivation to satisfy sexual desires would not preclude a finding of sexual abuse where the context of the act was clearly sexual. *State v. Pearson*, 514 N.W.2d at 455.

It would be a perverse construction of the supreme court's holding in *Pearson* to find the act was not sexual in nature. While there is no direct evidence Davis was satisfying his sexual desires by thrusting his fist into Smith's vagina, the context and the surrounding circumstances of the case make clear the act was sexual in nature.

Davis and Smith were lovers. Less than an hour before the incident Davis asked Smith to have sex. She refused. The refusal prompted Davis' violent behavior. Davis had no legitimate excuse for this act. This is not a case where a parent touches a child while bathing them or changing their diaper. Davis purposely penetrated Smith's vagina with his fist after she had denied him sex. The fact he intentionally secluded Smith while performing this brutal act indicates his consciousness of the sexual nature of the act. The district court's denial of Smiths judgment of acquittal for sexual abuse is affirmed.

### V. Ineffective Assistance of Counsel.

Davis last contends his trial counsel was ineffective. He alleges his lawyer was ineffective for his: (1) failure to request a jury instruction to aid the jury in determining whether his act was sexual in nature; (2) failure to discover exculpatory police reports; (3) failure to challenge expert testimony; (4) failure to conduct an independent investigation; and (5) failure to make a record regarding alleged prosecutorial misconduct during closing arguments.

■ Generally, claims of ineffective assistance of counsel are preserved for postconviction proceedings. *State v. Kone*, 557 N.W.2d 97, 102 (Iowa App.1996). However, they may be resolved on direct appeal when the record adequately addresses the issues. *Id.*

■ The defendant bears the burden of demonstrating ineffective assistance of counsel. *State v. Morgan*, 559 N.W.2d 603, 612 (Iowa 1997); *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994); *Kone*, 557 N.W.2d at 102.

"A defendant receives ineffective assistance of counsel when (1) the defense attorney fails in an essential duty and (2) prejudice results." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *State v. Bugely*, 562 N.W.2d 173, 178 (Iowa 1997). To prove counsel failed in an essential duty, the defendant must prove the attorney's performance was outside the range of normal competency. *Kone*, 557 N.W.2d at 102. The court will generally presume counsel is competent, and we will not second guess a reasonable trial strategy. *State v. Wissing*, 528 N.W.2d 561, 564 (Iowa 1995).

> [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered trial strategy."

*Id.* (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95). "The benchmark for judging any claim for ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process the trial cannot be relied on as having produced a just result." *Kone*, 557 N.W.2d at 102. It is not enough to simply claim counsel should have done a better job. *Dunbar*, 515 N.W.2d at 15. The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation would have changed the outcome. *Id.*

■ The test for prejudice is whether counsel's failure worked to Davis' actual and substantial disadvantage so that a reasonable possibility exists that but for the trial attorney's unprofessional errors, the resulting conviction would have been different. *State v. Johnson*, 534 N.W.2d 118, 128 (Iowa App. 1995). "A reasonable probability is one sufficient to undermine confidence in the outcome." *Kone*, 557 N.W.2d at 102.

■ There is sufficient evidence on the record to determine whether Davis' counsel was ineffective in regard to the instruc-

tion on whether his act was sexual in nature. Davis contends his counsel erred because he did not propose an instruction which included a list of circumstances to determine whether the act of thrusting his fist into Smith's vagina was sexual.[2] Instruction fourteen, an Iowa Uniform Jury Instruction, correctly conveyed to the jury that the act must be sexual in nature. *See* Iowa Crim. Jury Instruction 200.2 (1993). It was not error for defense counsel to request this instruction, without more detail. Even if it was a breach of an essential duty by his lawyer, Davis cannot prove he was prejudiced. The evidence was so overwhelming of the defendant's act being sexual in nature, it is highly unlikely any instruction would have caused the jury to conclude otherwise.

Because there is insufficient evidence on the record to determine whether Davis' counsel breached essential duties in the manner Davis alleges, we preserve the remaining issues for postconviction relief proceedings.

**AFFIRMED.**

HUITINK, J., concurs.

SACKETT, P.J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part; dissenting in part).

I concur in part and dissent in part. Defendant was convicted of both second-degree sexual assault and aggravated assault. The conduct which the majority relies upon for the kidnapping was inherently incidental to the sexual assault charge. Consequently, I fail to find substantial evidence supporting the kidnapping charge.

2. Jury Instruction number fourteen read:
   "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.
   Because determining the defendant's specific intent requires you to decide what the defendant was thinking when a act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of their acts.