# IN THE COURT OF APPEALS OF IOWA

No. 23-0973
Filed May 8, 2024

**STATE OF IOWA,**
  Plaintiff-Appellee,

**vs.**

**JOHN ROBERT WEST,**
  Defendant-Appellant.
_____

Appeal from the Iowa District Court for Muscatine County, Henry W. Latham II, Judge.

A defendant appeals a conviction for false imprisonment and sentences requiring him to complete sex offender treatment while in prison. **CONVICTIONS AFFIRMED AND SENTENCES VACATED IN PART.**

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

"I wanted to go home," is what thirteen-year-old A.B. said when John West was sexually abusing him in a locked motel room. A jury convicted West of third-degree sexual abuse, lascivious acts with a child, and false imprisonment. He was sentenced to a total term of imprisonment not to exceed twenty-one years and ordered to complete sex offender treatment. West appeals, challenging the sufficiency of the evidence supporting the confinement element of his conviction for false imprisonment and claiming the district court "lacked authority to order sex offender treatment."

I.      *Sufficiency of the Evidence*

We review West's first claim for correction of errors at law, giving high deference to the verdict. *See State v. Burns*, 988 N.W.2d 352, 370 (Iowa 2023). "The jury's verdict binds this court if the verdict is supported by substantial evidence," which is "evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (citation omitted).

The record shows that A.B.'s weekend with West started with a lie. West is an over-the-road truck driver. On his weeks off, West would stay at a motel and spend time volunteering at a mission. A.B.'s family volunteered there too. West befriended A.B. and his mother, eventually convincing her to let A.B. work with him on his son's farm for a weekend. Because A.B. wanted to earn some money, his

mother agreed. But West's son didn't own a farm. Instead, West picked A.B. up from the mission on a Friday evening after school and took the child to his motel room. The first night, West and A.B. ordered pizza and watched a movie. The next day, A.B. asked West if they were going to work, but West told him that it was too muddy. So they ran some errands and watched football. When A.B. woke up Sunday morning, his cell phone was missing. He had been using it to stay in contact with his mother. West claimed that he didn't know where it was, even though they were the only two in the room.

That evening, A.B. was watching television when West told him to take a shower. When A.B. was done, West had him put a towel down on one of the beds. He then told A.B. to get baby oil and a hand towel from one of West's bags. After asking A.B., "Do you trust me?" West had the child lay down naked on the towel. West rubbed the oil all over A.B.'s body, including his "penis and . . . balls." A.B. was scared and crying loudly, telling West that he wanted to go home. Concerned about the noise, West told A.B. to stop crying or he would beat him. A.B. cried louder, hoping that others at the motel would hear him. West promised to take A.B. home but told him to wash the baby oil off first.

A.B. went into the bathroom and locked the door. He showered and put his clothes on. When he came out of the bathroom, A.B. saw that the door to the motel room was locked, with the chain on the door. West then told A.B. that "whatever happened in the room stayed in the room." Even though he felt trapped, A.B. began to gather his things together. He asked West for his phone again, and West threw it at him. Once he had his phone back, A.B. grabbed his bag and unlocked the door with shaking hands. He ran outside and called his mom, crying,

"[M]om, please come get me, mom, please come get me, I want to come home, I want to come home." West followed A.B. outside, but the child ran to a nearby business to wait for his mom. Once they were back home, A.B. told his mom what happened. The family confronted West at the mission the next day, and the police were called.

During his interview with the police, West said that A.B. spent the weekend with him to work at a friend's sawmill. When the detectives questioned that story, West admitted it was a lie to make himself "look better." West denied touching A.B. and claimed the child became "upset just out of the blue and decided to leave on Sunday." West's story evolved at trial, where he testified that A.B. "went ballistic" after he expressed concern about A.B.'s father using drugs and "that [the Iowa Department of Health and Human Services] could get involved in the case if they ever found out." He thought A.B. made up the sexual abuse as retaliation against him.

The jury didn't believe West and convicted him of third-degree sexual abuse, lascivious acts with a child, and false imprisonment. West only challenges the sufficiency of the evidence on the "confinement" element of his false-imprisonment conviction. For that count, the jury was instructed the State was required to prove:

> 1. On or about January 16, 2022, the defendant intentionally confined A.B.
> 2. A.B. was confined against his will.
> 3. The defendant did not have a reasonable belief that he had a right or authority to confine A.B.

*Accord* Iowa Code § 710.7 (2022). The jury was further instructed that

[c]onfinement requires more than what is included in the commission of the crime of Sexual Abuse in the Third Degree and Lascivious Acts with a Child.

A person is "confined" when his freedom to move about is substantially restricted by force, threat, or deception. The person may be confined either in the place where the restriction began or in a place to which he has been removed.

In determining whether confinement exists, you may consider whether:
1. The risk of harm to A.B. was substantially increased.
2. The risk of detection was significantly reduced.
3. Escape was made significantly easier.[1]

West argues that any confinement A.B. experienced in the motel room "was incidental to the commission of sexual abuse and lascivious acts." More specifically, West contends that because A.B. "was able to get up and get dressed and leave the motel with his belongings," any force or threats described at trial "were incidental to the abuse," and he "in no way prevented" A.B. from leaving. Upon viewing the evidence in the light most favorable to the State, we reject these arguments.

As the State asserts, "On Sunday night, A.B.'s movement was substantially restricted to the motel room by West's continuing deception." The evidence

---

[1] This definition of confinement comes from our supreme court's opinion in *State v. Rich*, 305 N.W.2d 729, 745 (Iowa 1981), which concluded that the terms "confines" and "removes" in the kidnapping statute, Iowa Code section 710.1, "require more than the confinement or removal that is an inherent incident of commission of" the underlying crime. The State notes that although "the same confinement definition has been used in the past for false imprisonment, *see State v. Sinder*, 479 N.W.2d 622, 623–24 (Iowa Ct. App. 1991), the rationale for the incidental rule" and its intensifiers does not apply to false imprisonment because, unlike the statute criminalizing kidnapping, "false imprisonment already has additional, built-in elements to prove beyond the underlying crimes." *Compare* Iowa Code § 710.1 *with* § 710.7. But, as the State recognizes, we need not reach this issue because the unchallenged instructions became the law of the case. *See State v. Crawford*, 974 N.W.2d 510, 521 (Iowa 2022). So we save that issue for another day.

showed that West took A.B.'s cell phone on Sunday morning, cutting off his ability to contact his mother, who thought that he was busy working. *See State v. Sabasta*, No. 13-0101, 2014 WL 4628943, at *2 (Iowa Ct. App. Sep. 17, 2014) (noting that defendant "further isolated and confined" the victim by taking away her cell phone); *see also State v. Little*, No. 10-1642, 2011 WL 5399202, at *1 (Iowa Ct. App. Nov. 9, 2011) (concluding that a reasonable jury could have found that defendant intended to confine the victim by, among other things, taking away the victim's "means of communication with the outside world"). During the abuse, A.B. was naked and locked in the motel room with West, further increasing the risk of harm and reducing the risk of detection. *See State v. Griffin*, 564 N.W.2d 370, 373 (Iowa 1997) (noting that by ordering the victim to take off her clothes before the sexual assault, the kidnapper was able to keep her confined to the motel room, which increased her risk of harm and lowered his chances of detection); *State v. Butts*, No. 11-0069, 2011 WL 5867065, at *9 (Iowa Ct. App. Nov. 23, 2011) (finding that the defendant's actions in isolating a victim in an apartment with a locked door reduced the risk that his actions would be detected). While West argues that locking the door was a normal "security precaution most guests take," our supreme court recently reiterated, "evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *State v. Brown*, _____ N.W.3d _____, _____, 2024 WL 1684833, at *6 (Iowa 2024) (cleaned up).

The period of confinement also exceeded the time it took West to sexually abuse A.B. *See State v. McGrew*, 515 N.W.2d 36, 39 (Iowa 1994) (noting there is

no minimum period of confinement). A.B. testified that West rubbed baby oil on his private parts for about five to ten minutes, but an hour passed between the first shower that West ordered him to take and the last. *Cf. State v. Robinson*, 859 N.W.2d 464, 478 (Iowa 2015) (noting the substantially-increased-risk-of-harm prong may be satisfied if the "duration of confinement substantially exceeds that of the underlying crime" and finding that was absent where there was only a "few seconds of additional confinement" when the victim was dragged from the hallway to the bedroom). During that hour, A.B. said that he felt trapped in the motel room. West had threatened to beat him if he didn't stop crying and told him that "whatever happened in the room stayed in the room." At some point—A.B. said it was outside the motel room after he unlocked the door while West said it was inside—West called a friend from the mission, who falsely told A.B. that his mother's phone was broken. A.B. knew this was a lie because he had already talked to his mother. West then followed A.B. out of the motel room, telling him to get back inside, until A.B. took off running.

Taken as a whole, this evidence was sufficient to convince a rational jury beyond a reasonable doubt that A.B. was confined. We accordingly affirm West's conviction for false imprisonment.

## II. Sentencing

West next claims, and the State agrees, that the district court exceeded its authority by ordering him to complete sex offender treatment as part of its oral pronouncement of sentences for his sexual abuse and lascivious acts convictions. *See State v. Gardner*, No. 22-0422, 2023 WL 153509, at *2 (Iowa Ct. App. Jan. 11, 2023) (agreeing with defendant that the court lacked statutory authority to

order him to complete sex offender treatment while incarcerated); *see also State v. Smith*, No. 18-2248, 2021 WL 1400772, at *3 (Iowa Ct. App. Apr. 14, 2021). Although this directive was not repeated in the written sentencing order, the parties also agree that when there is a discrepancy between the oral pronouncement of sentence and the written judgment, the oral pronouncement controls. *See State v. Hess*, 533 N.W.2d 525, 528 (Iowa 1995).

As a result, we vacate the district court's order requiring West to complete sex offender treatment as part of his sentences for third-degree sexual abuse and lascivious acts with a child. We do not remand for entry of a corrected sentencing order since the written judgment did not contain that directive.

**CONVICTIONS AFFIRMED AND SENTENCES VACATED IN PART.**