# IN THE COURT OF APPEALS OF IOWA

No. 13-1316
Filed October 1, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**AARON JOHN HARRIS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Rustin T. Davenport, Judge.

Aaron Harris appeals his conviction for first-degree murder. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Benjamin Parrott and Douglas D. Hammerand, Assistant Attorneys General, and Carlyle D. Dalen, County Attorney, for appellee.

Heard by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**VAITHESWARAN, P.J.**

A jury found Aaron Harris guilty of first-degree murder in connection with the death of his girlfriend. The following instruction set forth the elements of the crime:

> 1. On or about the 10th day of July, 2012, the Defendant strangled Sarah Winters.
> 2. Sarah Winters died as a result of being strangled.
> 3. The Defendant acted with malice aforethought.
> 4. The Defendant acted willfully, deliberately, premeditatedly, and with specific intent to kill Sarah Winters.

On appeal, Harris challenges the sufficiency of the evidence supporting the "malice aforethought" and "specific intent" elements. He specifically asserts "mental illness and intoxication" prevented him from forming these mental elements.

The district court defined "malice aforethought" and "specific intent" as follows:

> "Malice aforethought" is a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time. It is sufficient if it exists any time before the killing.
> . . . .
> "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.

The court also instructed the jury on "diminished responsibility," explaining the phrase as "a mental condition which does not allow the person to form a premeditated, deliberate, specific intent to kill." As for intoxication, the court gave the jury the following instruction:

> The Defendant claims he was under the influence of alcohol at the time of the alleged crime. The fact that a person is under the influence of alcohol does not excuse or aggravate his guilt.

Even if a person is under the influence of alcohol, he is responsible for his act if he had sufficient mental capacity to form the specific intent before he fell under the influence of the alcohol and then committed the act. Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming the specific intent.

While Harris challenges both malice aforethought and specific intent, "voluntary intoxication and diminished capacity are only defenses to the specific intent element of a crime." *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). Accordingly, we will focus exclusively on that element.

The jury heard conflicting expert opinions on Harris's ability to form specific intent. An expert retained by Harris found an absence of specific intent based on "the synergistic effects of having a bipolar 2 disorder as well as . . . this really high level of intoxication." The State's expert, in contrast, opined "with a strong degree of medical certainty" that Harris "was fully capable of deliberating, premeditating and forming the specific intent to kill." Harris, he said, did not have "any psychiatric illnesses which could cause symptoms . . . which would interfere with his ability to" form specific intent and the amount of alcohol he consumed on the day of the strangulation was less than the amount he routinely consumed. Finally, according to the State's expert, Harris recalled stopping momentarily in the course of strangling his girlfriend and, when he realized she was still alive, "went back at it and resumed strangling her." In this expert's view, his action seemed "to be pretty clear indication of . . . being able to form the specific intent to kill and then carrying it out."

It was the jury's prerogative to accept the opinion of the State's expert over the defense expert's opinion. *See State v. Lawrence*, 559 N.W.2d 292, 296

(Iowa Ct. App. 1996) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive." (Internal quotation marks and citation omitted)). Indeed, the jury was instructed to "[c]onsider expert testimony just like any other testimony" and "give it as much weight as . . . it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case."

A reasonable juror could have found the State's expert opinion to be consistent with a videotaped confession, in which Harris admitted to strangling his girlfriend, demonstrated precisely how he strangled her, and conceded he stopped, saw she was still alive, and "squeeze[d] tighter" until her face turned purple. A reasonable juror additionally could have viewed Harris's demeanor during the videotaped confession and discerned appropriate answers and no signs of intoxication, as the interrogating officer testified. Finally, a reasonable juror examining the videotape could have rejected Harris's assertion of delusional thinking and determined Harris acted rationally and with a clear head at the time of the strangulation.

Substantial evidence supports the jury's finding of guilt. *State v. Hennings*, 791 N.W.2d 828, 832 (Iowa 2010). We affirm Harris's judgment and sentence for first-degree murder.

**AFFIRMED.**